UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Crim. No. 21-CR-301 (TJK) |
| | : | |
| **STEPHEN HORN,** | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO MODIFY CONDITIONS OF RELEASE**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Opposition to Defendant Stephen Horn's ("Horn") Motion to Amend ("Mot. to Amend") Conditions of Release. ECF No. 35.

Horn moves the Court to modify his release conditions to allow him to possess a firearm after his arrest and subsequent charge by a criminal information for knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building on or grounds, in violation of 18 U.S.C. §1752(a)(2); violent entry and disorderly conduct on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2) (D); and parading, demonstrating, or picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) related to his knowing and unlawful entering the United States Capitol on January 6, 2021, during the unprecedented and violent riot the goal of which was to stop the lawful tabulation of the electoral votes and the certification of a democratically elected candidate for President of the United States. Horn is charged with the above misdemeanors arising from that event.

1

Despite being represented by counsel at appearances before Magistrate Judges in the Eastern District of North Carolina and District of Columbia and not objecting to the imposition of the restrictions, Horn, a concealed carry permit holder, asserts for the first time that the restriction against Horn's possession of a firearm is unduly restrictive and violates both his Second Amendment Right to carry and bear firearms and Due Process. Because the restriction is not unduly restrictive, does not implicate Horn's Second Amendment Right to carry and bear firearms, and does not violate Due Process, the Court should deny Horn's motion.

## BACKGROUND

The United States Capitol is a federal building and on January 6, 2021 it was closed to the public. A joint session of the United States Congress met at the United States Capitol (hereinafter "the Capitol") that day to certify the vote of the Electoral College. ECF No. 1-1, Statement of Facts at 1. "Rioters, attempt[ed] to disrupt the Joint Session of Congress" by breaking into the Capitol building and once inside rioters "vandalized and stole property and ransacked offices." *See Examining the U.S. Capitol Attack, A Review of the Security,* Committee on Homeland Security and Governmental Affairs Committee on Rules and Administration Report (June 8, 2021) https://www.rules.senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf. (last viewed January 3, 2022).

Defendant is one of hundreds, if not thousands of individuals, who entered the Capitol unlawfully that day. Horn stepped over a fence on the Capitol grounds that warned trespassers not to go past that point before he entered the Capitol. While inside the Capitol, Horn stood on a monument with one hand on the wall as he held a cellphone See ECF No. 1-1, Statement of Facts at 4. Horn joined the chant "U.S.A., U.S.A." with others as he roamed throughout the Capitol for almost two-hours. Id. at 3.

On January 11, 2021, a New York Times social media page published a picture, later identified by two tipsters, of Defendant photographed in the Capitol as he stood on a monument above others dressed in a black helmet, black jacket, back gloves, and carrying a backpack as he held the cellphone. ECF No. 1-1, Statement of Facts at 2.  One tipster stated he/she saw the New York Times Magazine social media page and was "95% sure" the picture depicted Horn and added that he/she believed Horn was inside the Capitol as a journalist but was unaware of any media credentials Horn possessed.



Id. (photograph of Horn in the red circle as he appeared in the Capitol unlawfully on January 6, 2021).

Between January 11, 2021, and January 19, 2021, Federal Bureau of Investigation ("FBI") agents viewed Horn's publicly available Facebook page and reviewed Horn's numerous posts, including a post in which Horn admitted being inside the Capitol, which Horn explained was not to protest but to "accurately document and record a significant event which was taking place." Id. at 3.  Agents downloaded the approximate two-hour video.  Id.  Although video footage does not depict Horn holding the camera, based on conversations between Horn and FBI agents, the agents were familiar with Horn's voice and identified Horn's voice on video footage posted on Horn's Facebook page in which Horn, while in the Capitol, chanted in a raised voice "U.S.A."  Id.

On February 24, 2021, Horn, with counsel present, gave a voluntary and unprotected interview with the FBI. Id. Horn admitted that he stepped over a fence on the Capitol grounds that warned trespassers not to go past that point, admitted being in the Capitol on January 6, 2021, admitted that he stood on a monument inside the Capitol with one hand on the wall as he held a cellphone, and admitted he wore clothing consistent with the picture in the New York Times social media online magazine as he stood on the monument. Id. at 4.

On March 29, 2021, the United States issued a criminal complaint that charged Horn with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building on or grounds, in violation of 18 U.S.C. §1752(a)(2); violent entry and disorderly conduct on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2) (D); and parading, demonstrating, or picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) against Horn and the Court issued an accompanying arrest warrant. ECF Nos. 1, 7.

On April 9, 2021, Horn, "through [ ] counsel, voluntarily met law enforcement agents at the United States Courthouse in downtown Raleigh, North Carolina" where Horn was arrested on the warrant. ECF Nos. 7, 18 at 1; ECF No. 35 at 1-2. Horn's counsel filed a notice of appearance in the Eastern District of North Carolina. ECF No. 18 at 6-7. A Magistrate Judge released Horn on a personal recognizance bond under conditions which included a provision banning his possession of "a firearm, destructive device, or other weapon."[1] ECF No. 18 at 2-5. Horn did not contest the provision.

---

[1] The release order, Form AO 199b (Rev. 12/20), issued by the United States Magistrate Judge in the Eastern District of North Carolina included the following additional conditions: (7)(a) submit to supervision by and report for supervision to the United States Probation Office, (7)(d) surrender any passport, (7)(e) not obtain a passport or other international travel document, (7)(f) abide by the following restrictions on personal association, residence, or travel: travel is restricted to the

On April 13, 2021, the United States filed a four-count information that charged Horn with the aforementioned-offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104. ECF No. 5.

On April 19, 2021, Horn and counsel appeared before another United States Magistrate Judge in the Eastern District of North Carolina. ECF No. 18 at 8. Horn waived his right to an identity hearing. Id. Horn's conditions of release were modified to require him to appear on April 27, 2021 via Zoom for a hearing in the District of Columbia. Id. at 9. Horn's other conditions of release remained unchanged. Id. at 10-12.

On April 27, 2021, the Pretrial Services Agency for the District of Columbia prepared a pretrial services report. ECF No. 11. The report included no information related to Horn's education or employment. Id. at 3. It did, however, note that Horn had no prior criminal history or supervision noncompliance. Id. at 1. The Pretrial Services Agency recommended that Horn be released on conditions that included, among other conditions, Horn not possess firearms.[2] Id. The Pretrial Services Report characterized Horn's global rearrest risk as medium. Id. Horn's counsel in North Carolina filed a motion for leave to appear Pro Hac Vice, which the Court allowed. ECF No. 10. The Honorable G. Michael Harvey, United States Magistrate Judge, arraigned Horn on the charges contained in the Criminal Information and Horn pleaded not guilty. The Court released Horn on a personal recognizance bond. ECF No. 13. Defendant is supervised by Pretrial Services in the Eastern District of North Carolina. Id. at 2. Relevant here, the personal recognizance bond

---

continental United States unless approved in advance by USPO. Defendant may not enter Washington D.C. except for court, supervision, or attorney consultations only, and (7)(s) report as soon as possible, to the pretrial services or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

[2] The Pretrial Service Agency recommendations are consistent with the conditions of release ordered by the Magistrate Judges in the Eastern District of North Carolina.

contained additional conditions in which Horn agreed that he would "not possess a firearm, destructive device, or other weapon." Id.  Horn did not object to the provision.

On December 17, 2021, Horn filed the instant Mot. to Amend Conditions of Release. ECF No. 35.

## **ARGUMENT**

### I.    **Applicable Authority.**

Under the Bail Reform Act, 18 U.S.C. § 3142(b), if a judicial officer determines that release under two standard conditions (not committing federal, state, or local crimes while on pretrial release and cooperating in the collection of DNA) "will not reasonably assure the appearance of the person as required or will endanger the safety of any person or the community," the judicial officer may impose additional conditions.  18 U.S.C. § 3142(b), (c)(1)(B).  In that event, the judicial officer shall release the defendant "subject to the least restrictive further condition, or combination of conditions" that "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).  These conditions may include the condition that the person "refrain from possessing a firearm, destructive device, or other dangerous weapon."  18 U.S.C. § 3142(c)(1)(B)(viii).

To determine the appropriate conditions of release the judicial officer considers factors that include: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence;" (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."  18 U.S.C. § 3142(g) ("Section 3142(g) factors").  The judicial officer may also amend a release order "at any time."  18 U.S.C. § 3142(c)(3).

    **II.**    **The Court Should Not Modify Horn's Release Conditions.**

Horn argues that the provision banning Horn from possessing a firearm while on pretrial release "is unduly restrictive and unconstitutional" because Horn is not a danger to any other person or the community, poses no risk of flight, and the restriction violates Horn's Second Amendment Rights. ECF No. 35 at 4-7. Horn's arguments fail because the ban is not unduly restrictive since Horn is already under the least restrictive conditions of release and such restrictions in this case do not violate the Second Amendment.

    **a. The Section 3142(g) factors establish the restriction against Horn's possession of a firearm while on pretrial release is not unduly restrictive.**

Horn asserts that the condition prohibiting him from possessing a firearm while on pretrial release is unduly restrictive because Horn cannot possess a firearm for self-defense purposes. Horn's argument fails as three Magistrate Judges found that pursuant to 18 U.S.C. § 3142(c)(1)(b)(viii) the least restrictive conditions for Horn's release included a restriction prohibiting Horn from possessing a firearm. ECF No. 18 at 3, 10; ECF No. 13 at 2. Each Magistrate Judge made an individualized assessment of the need for imposing the additional conditions and informed Horn of those additional conditions. 18 U.S.C. § 3142(h). Additionally, Horn was represented by counsel throughout these proceedings and did not object to the restrictions when they were imposed and Horn offers no reason now why he waited months later to move to amend the conditions of his release.

Moreover, the Section 3142(g) factors establish the prohibition barring Horn from possessing a firearm is not unduly restrictive. Regarding the nature and circumstances of the offense charged, the events of January 6, 2021 are unprecedented. The violent attack on the Capitol was unlike anything in recent memory and the reverberations of which continue to impact

7

the Nation as evident by the largest federal investigation and prosecutions in modern history and ongoing congressional action. Based on the circumstances underlying Horn's misdemeanor charges, this factor weighs heavily against his request.

Likewise, the weight of the evidence is against Horn. Horn was undoubtably inside the Capitol unlawfully. Horn admitted he crossed a downed fence that warned trespassers not to go beyond the fence perimeter unto the grounds. Moreover, Horn was in league with others who unlawfully entered the Capitol as evidenced by his chant of "U.S.A.! U.S.A.!" throughout his time inside the Capitol, which undercuts any implication that Horn was acting as a neutral journalist recording events on January 6, 2021. ECF No. 1-1, Statement of Facts at 3.

Regarding the remaining two factors, Horn's history and characteristics and the nature and seriousness of the danger to any person or the community, Horn asserts he is employed as a software engineer for a company in Wake Forest, North Carolina, graduated college with a degree in General Management, and is a journalist.[3] ECF No. 35 at 2. Horn has no criminal history. The Pretrial Services Agency noted Horn's lack of a criminal history. The Pretrial Service Agency, however, also noted that Horn presented a medium risk of rearrest. No. 11 at 1 (Pretrial Services Agency recommendation). Therefore, Magistrate Judge Harvey factored Horn's lack of criminal history when making an individualized assessment of the need to impose additional release conditions under 18 U.S.C. § 3142(c)(1)(B). ECF No. 13 (Release Order).

The imposition of additional conditions on a defendant's release under pretrial conditions such as Horn, including the prohibition barring a released defendant from possessing firearms and dangerous weapons, is far from unusual. In United States v. Smedley, 611 F. Supp. 2d 971-72

---

[3] The Pretrial Services Agency's report did not include information related to Horn's employment or education.

(E.D. Mo. 2009), a defendant charged with receiving child pornography in violation of 18 U.S.C. § 2252a(A)(2) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(b) was released on conditions that included the defendant:

> (1) report to and be supervised by the Pretrial Services Agency; (2) restrict travel to the Eastern District of Missouri and Troy, Illinois; (3) avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution; (4) refrain from possessing any firearm, destructive device, or other dangerous weapon; (5) submit to home detention; and (6) submit to electronic monitoring.

Id. at 972. The defendant objected to provisions required under the Adam Walsh Child Protection Safety Act of 2006 ("Adam Walsh Act") as violating "the Due Process Clause of the Fifth Amendment, the Excessive Bail Clause of the Eighth Amendment, and the separation of powers doctrine."[4] Id. at 973. The court avoided the constitutional questions and granted the defendant's motion as to the home detention and electronic monitoring conditions but denied the motion as to the other conditions, including the condition prohibiting the defendant from possessing a firearm, destructive device, or other dangerous weapon because such restrictions were not dependent on the Adam Walsh Act, the court normally included such conditions where it involved some risk, and the "condition is a precaution to safeguard pretrial services officers who will have contact with the defendant in their supervisory activities." Id. at 973-77.

### b. The prohibition against possession of a firearm while on pretrial release does not violate the Second Amendment.

The Second Amendment to the United States Constitution provides that "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend II. In District of Columbia v. Heller, 554 U.S.

---

[4] Section 3142(c)(1)(B) mandated in cases arising under the Adam Walsh Act involving minor victims that courts must include in any release order a condition requiring electronic monitoring. Smedley, 611 F. Supp. 2d at 972-73.

9

570, 592 (2008), the Supreme Court clarified that the right to carry and possess firearms was an individual right. Id. This right is not an unlimited right "and courts routinely explained that the right [to bear and carry firearms] was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Id. at 626; see also McDonald v. City of Chicago, 561 U.S. 742, 786 (2010). Without announcing an exhaustive historical list of exceptions to "the full scope of Second Amendment" the Supreme Court recognized limitations on the right to bear arms such as prohibitions against possession of firearms by felons, mentally ill individuals, or laws prohibiting the possession of firearms in sensitive places, or laws that impose conditions and qualifications on the commercial sale of firearms. Heller, 554 US at 626-27.

Post-Heller, the District of Columba Circuit Court of Appeals established in Heller v. District of Columbia (Heller II), 670 F.3d 1244 (D.C.Cir.2011), a two-step approach to decide whether a restriction fell within the Second Amendment right to bear and carry arms for purposes of self-defense. Id. First, a court must determine whether the restriction encroaches on the Second Amendment. Id. at 1252. The Supreme Court recognized in Heller that longstanding and historical limitations are exceptions to the right to bear and carry arms. Heller, 554 US at 605-26 (conducting a historical analysis of post-ratification commentary of the Second Amendment, pre-Civil War case law, post-Civil War legislation, and post-Civil War commentary to determine the meaning of the Second Amendment). Further, "'longstanding' regulations are 'presumptively lawful,'" in that these restrictions do not place an unduly burden on conduct that falls within the Second Amendment. Heller II, 670 F.3d at 1253 (quoting Heller, 554 U.S. at 626-27 & n.26). If a restriction does encroach on rights protected by the Second Amendment, a court must determine the appropriate level of scrutiny to determine whether the restriction "passes muster under the appropriate level of constitutional scrutiny." Heller II, 670 F.3d at 1252.

Here, Horn advances a Second Amendment claim and an as applied claim to argue that the restriction violates Heller because Horn is not a convicted felon and even if convicted under the presently charged misdemeanors it would not deprive him of the right to possess a firearm. ECF No. 35 at 6-7.

First, Horn's argument that even if convicted he would be permitted to possess a firearm under the Second Amendment and therefore should be permitted to possess a firearm pending trial fails because what animated the enactment § 3142(c), which authorized courts to consider the risks to the community safety when setting conditions of release, was crimes a defendant may commit while on pretrial release. See e.g. SEN. REP. NO. 98-225, at 5-6 (1983). Thus, whether Horn would be permitted under North Carolina law to possess a firearm if convicted of the four misdemeanors is not relevant in a determination of whether Horn can possess a firearm pending a federal trial.

More importantly, Horn's arguments fail at the first step because the historical background of the Second Amendment implies that a court may impose a no-firearm prohibition as a condition of pretrial release. Courts have long had the authority to impose conditions on defendants' ability to remain at liberty pending trial, or even to detain them. The institution of bail, expressly recognized by the Eighth Amendment, has existed for centuries. See June Carbone, Seeing through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail, 34 Syracuse L. Rev. 517-529 & n.1 (1983) (explaining that the institution of bail existed in English law since shortly after the Norman conquest and defining "bail" broadly to refer to any condition of pretrial release). Further, there is no absolute right to pretrial release, United States v. Salerno, 481 U.S. 739, 753-54 (1987), which has always been conditioned on the accused's giving assurance "that he will stand trial and submit to sentence if found guilty." Stack v. Boyle, 342 U.S. 1, 4-5

11

(1951)(citing Ex parte Milburn, 34 U.S. 704, 710 (1835)). A defendant may even be detained pending trial where he cannot pay the bail required. United States v. Cort, No. CR97-591 (JMF), 1997 WL 732429 at *2 (D.D.C. Sept. 24, 1997) (finding a defendant's inability to make bond does not require a lesser bond as the issue was whether the bond set was "so unreasonable as to constitute and abuse of discretion."); see also United States v. McConnell, 842 F.2d 105, 107-08 (5th Cir. 1988).  Congress has sought to reduce pretrial detention resulting solely from an indigent defendant's inability to pay by instructing courts to prioritize nonfinancial conditions of release, including restrictions on travel and association, curfews, and "any other condition deemed reasonably necessary." Bail Reform Act of 1966, 18 U.S.C. § 3146, Pub. L. 89-465, June 22, 1966, 80 Stat. 214. Those "other conditions" included restrictions on firearms possession. See, e.g., SEN. REP. NO. 98-225, at 13 (1983) ("Although each of the additional conditions could appropriately be imposed today under the catch-all in current law, spelling them out in detail is intended to encourage the courts to utilize them in appropriate circumstances.").

The risk of harm to a pretrial supervision officer is such a recognized factor that permits imposition of a restriction barring a defendant from possessing firearms during the pendency of the case.  For example, in United States v. Snead, No. CR 12-132M, 2014 WL 4473773 (D.R.I. Feb. 4, 2014), a United States Postal Service employee was charged with unlawfully opening mail matter and removing gift cards and cash, in violation of 18 U.S.C. § 1703(a), a non-violent felony offense. Id. at *1.  Like Horn, the defendant, had no criminal history.  Id. at *2.  The defendant was released on a personal recognizance bond with additional conditions, including a restriction prohibiting him from possessing a firearm.[5]  Id. at **2-7.  Also, like Horn, the defendant later

---

[5] Additional conditions included a prohibition on excessive use of alcohol or controlled substances and the requirement that the defendant submit to random drug testing based on the defendant's marijuana use in the month preceding his arraignment prior to his arrest, travel restrictions in

challenged his pretrial release conditions arguing that he was not a risk of flight or danger to the community and, relevant here, the restriction barring him from possessing a firearm could not be imposed unless danger to the community related to the use of firearms and without that justification the restriction violated the defendant's rights under the Second Amendment as established in Heller. Id. at **7-8. The court rejected the defendant's claim and found as one basis denying the defendant's motion that a pretrial restriction on the possession of firearms was necessary "in most cases" because it protected the Pretrial Services officers supervising pretrial defendants released on conditions. Id. at *8 (quoting Smedley, 611 F.Supp.2d at 974). As such Horn's Second Amendment and as applied claims fail.

### c. The individualized determination required by the Bail Reform Act satisfied due process.

Relevant here, the Fifth Amendment of the United States Constitution states "No person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Horn claims, without elaboration, that the restriction also violates his rights under the Fifth Amendment. ECF No. 35 at 7. Procedural Due Process claims are evaluated using a well-established two-step inquiry. First, the Court determines whether the government is interfering with a protected liberty or property interest. Second, the Court considers whether the procedures used adequately protect that interest. O'Donnell, 892 F.3d at 157. Determining whether procedures are adequate depends on balancing (1) the private interest affected, (2) the risk of an erroneous deprivation of such interest, and the probable value, if any, or additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the burdens that new procedures would impose. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The Bail Reform

---

requirement to seek new employment or maintain employment, and to report to pretrial services. United States v. Snead, No. CR 12-132M, 2014 WL 4473773 at **7-9 (D.R.I. Feb. 4, 2014).

Act's procedures for setting conditions of pretrial release are constitutionally sufficient because the Act provides for an individualized determination by a neutral judicial officer. Further, the Act limits the circumstances in which a defendant may be detained, guarantees an arrestee a prompt detention hearing, requires the Government to demonstrate probable cause to believe that a charged crime had been committed by the arrestee and provides for a "full-blown adversary hearing" which must be decided by a neutral decisionmaker.   Salerno, 481 U.S. at 747-52 (rejecting Due Process challenges to the Bail Reform Act based on the Act's extensive safeguards).

Here, three Magistrate Judges have each made individualized determinations that the additional conditions were the least restrictive conditions that will reasonably assure Horn's appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(c)(B). The Magistrate Judges each informed Horn of the restrictions. 18 U.S.C. § 3142(h). Horn was represented by counsel and each time did not object to the restrictions. As such, Horn's due process challenge fails. But see United States v. Arzberger, 592 F.Supp.2d 590, 603 (S.D.N.Y. 2008)(holding Adam Walsh Act amendment to the Bail Reform Act which mandated judicial officers add conditions in pretrial release orders involving minor victims in sex offense cases violated due process because it did not permit a defendant to challenge the conditions).

## CONCLUSION

WHEREFORE, for the above-stated reasons the court should deny Horn's Mot. to Amend his pretrial release conditions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:  /s/ Michael G. James
MICHAEL G. JAMES

14

Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-D.C.)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on January 14, 2021 undersigned counsel served a copy of the Government's Memorandum in Opposition on counsels for Defendant through the Court's electronic case file system.

By: /s/ Michael G. James
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-D.C.)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530