UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NO. 1:21-CR-00301-TJK-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN ETHAN HORN,<br><br>*Defendant.* | DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE IN OPPOSITION TO HIS MOTION TO MODIFY THE RELEASE CONDITIONS |

Defendant Stephen Ethan Horn, by and through undersigned counsel, submits the following reply to the government's response in opposition (D.E. 37) to his motion for the Court to amend his conditions of release (D.E. 35). The government's response misapplies the law governing pretrial release and detention in the federal district courts. Mr. Horn writes to clarify these standards and to further address why the firearm restriction, as applied to him in this case, is unduly restrictive and not needed to address a concern that Mr. Horn either poses a risk of flight or danger to any other person or the community. In further support, he states as follows:

*(I) The Waiver Issue*

One of the government's primary arguments against Mr. Horn's request to amend his conditions of release is that Mr. Horn never objected to the imposition of the firearm prohibition condition during his initial appearances in either this district or the Eastern District of North Carolina. *See* D.E. 37 at 2 (noting that Horn did not initially object to the condition and that he now "asserts for the first time that the restriction . . . is unduly restrictive and violates" his constitutional rights); *id.* at 4 (stating that Horn did not "contest" the restriction at a hearing in the Eastern District of North Carolina); *id.* at 6 (noting that Horn did not "object" to the

1

restriction at his initial appearance in this district); *id.* at 7 (again noting that Horn did not object to this restriction when it was imposed and that he has offered no reason, in his motion to amend at D.E. 35, "why he waited months later to move to amend the conditions of his release").

The argument that Mr. Horn has waived his right to seek modification of his release conditions by not objecting to their initial imposition has *no* basis in law. Indeed, it is telling that, in support of this proposition, the government cites no authority to support it. Instead, motions to modify conditions of release under 18 U.S.C. § 3145(a) "ha[ve] no express time limit." *United States v. Doby*, 928 F.3d 1199, 1207–08 (10th Cir. 2019); *see also* 18 U.S.C. § 3142(c)(3) (noting that the "judicial officer may at any time amend the order to impose additional or different conditions of release"). The Bail Reform Act of 1984 "allows an amendment of conditions of release . . . by the district court based on facts and *considerations* that were not, and often could not have been, before the magistrate judge when the original order was entered." *Doby*, 928 F.3d at 1207–08 (emphasis added); *see also United States v. Chrestman*, 525 F. Supp. 3d 14, 23 n.5 (D.D.C. 2021) (collecting cases holding that a "district court reviews a magistrate judge's release or detention order *de novo*").

Motions to amend conditions of release are routinely filed at various junctures of cases pending in district courts across the country because of the ever-changing circumstances in individuals' lives. *See, e.g.*, *United States v. Bahjet Shaher Dari, et. al.*, No. 5:21-CR-00394-D (E.D.N.C.) (showing that, for a multi-defendant case currently pending in the Eastern District of North Carolina, there have already been five different motions filed seeking modification of release conditions). Often, the government does not even object to the changes requested in these motions. *See id.*

Here, Mr. Horn's personal circumstances have changed such that he now has the desire to possess a concealed handgun for self-defense purposes, as allowed under North Carolina law. And that he did not initially object to the firearm restriction as a condition of release in this case is totally irrelevant to the question now before this Court, i.e. what "least restrictive" condition or combination of conditions, in addition to the standard conditions that he not commit a crime during the period of release and that he cooperate in the collection of a DNA sample, "will reasonably assure the appearance of [Mr. Horn] as required and the safety of any other person and the community." 18 U.S.C. § 3142(c).

> (II) The "Least Restrictive" Combination of Conditions Does Not Include a Firearm Restriction.

If a person is to be released under 18 U.S.C. § 3142, the statute presumes release on personal recognizance with *no* additional conditions except that the person (i) not commit another crime during the period of release and (ii) cooperate in the collection of a DNA sample. *See* § 3142(b). Additional conditions are authorized only if "the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." *Id.*

If the judicial officer determines that additional conditions are needed for either of those reasons, then the judicial officer is to release the person on the condition that he: (i) not commit another crime during the period of release and cooperate in the collection of a DNA sample; and (ii) be "subject to the least restrictive further condition, or combination of conditions," needed to "reasonably assure the appearance of the person as required and the safety of any other person and the community." § 3142(c). Subsection(c)(1)(B) then gives a non-exhaustive list of such potential conditions. *See* § 3142(c)(1)(B)(i)–(xiv). Among the conditions that courts may utilize, for example, are the condition that the defendant not possess a firearm, *see* § 3142(c)(1)(B)(viii),

3

as well as the condition that the defendant "report on a regular basis to a designated . . . pretrial services agency . . . ." *See* § 3142(c)(1)(B)(vi).

Though the statute is not entirely clear, the factors courts should consider in determining whether to release a person on personal recognizance or subject to additional conditions (and, if so, which ones) appear to be the same factors courts are to consider in determining whether, in a case where the government seeks detention, "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." *See* § 3142(g); *see also, e.g.*, *United States v. Cooper*, No. 2:21-CR-00077-01 JM, 2021 WL 4037566, at *2 (E.D. Ark. Sept. 1, 2021) (noting that release on "[p]ersonal recognizance would not reasonably assure th[e] Court of either her appearance or the safety of society" and proceeding to consider the § 3142(g) factors as to what conditions were needed). These factors include: "the nature and circumstances of the offense[s]" charged; "the weight of the evidence against the person;" the person's history and characteristics; and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id.*

Here, Mr. Horn did not contest, at the outset of his case, that release on personal recognizance would be inappropriate in this matter and instead agreed to release on conditions pursuant to § 3142(c). And while he believes, as explained further below, that all of the § 3142(g) factors actually weigh in favor of release on personal recognizance with no additional conditions in this case, he is prepared to continue on release subject to conditions if the Court deems necessary. However, because the firearm restriction as applied to his case is unnecessary and unduly restrictive, he persists in his request for the Court to strike this prohibition.

In resisting this request, the government maintains that Mr. Horn "is already under the least restrictive conditions of release" in this case. *See* D.E. 37 at 7. Under § 3142(c), this assertion is false.

The "least restrictive further condition, or combination of conditions[,]" for Mr. Horn would be the imposition of *no more than one* additional condition from the non-exhaustive list of potential conditions provided at § 3142(c)(1)(B). Instead, Mr. Horn is currently subject to not only the firearm restriction, but also additional conditions requiring him to: (i) notify the probation office in writing before moving or changing his phone number; (ii) submit to supervision by a probation officer; (iii) "stay away from DC except for attendance at Court proceedings, meeting with counsel, and required PSA business;" (iv) notify probation before traveling out of the Eastern District of North Carolina; and (v) seek court approval prior to traveling outside of the continental United States. *See* D.E. 13.

Thus, with a total of five conditions in addition to the standard ones requiring the defendant to not commit a crime during the period of release and to cooperate in the collection of a DNA sample, Mr. Horn's current conditions of release are clearly *not* the "least restrictive" combination of conditions that could have been imposed in this case. And the government's claim that "three Magistrate Judges found" these conditions to be appropriate based on "an individualized assessment of the need for imposing the additional conditions" is similarly false. *See* D.E. 37 at 7.

Again, Mr. Horn initially consented to these conditions of release. Having so agreed, each court that released him was not required to conduct such an assessment and pass judgment on whether said conditions were necessary for his case. *See, e.g., Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (reminding that the "case-or-controversy requirement" of

5

Article III in the Constitution "restricts the authority of federal courts to resolving . . . actual controversies" (citations and quotation marks omitted)). Now that he has raised a challenge to such conditions under 18 U.S.C. § 3145(a), the task for this Court is to conduct "an independent review" of the propriety of these conditions and decide which ones, if any, are needed to reasonably assure Mr. Horn's appearance and the safety of any other person or the community. *See United States v. McKinney*, No. 21-CR-238, 2021 WL 6064024, at *1 (E.D. Wis. Dec. 22, 2021) (further noting that the district court "may start from scratch" in making this determination).

Applying the § 3142(g) factors here, Mr. Horn submits that no additional conditions are needed, including the restriction prohibiting him from possessing a firearm. Concerning the nature and circumstances of the offense, even some of the government's proffered evidence shows that Mr. Horn went to the Capitol on January 6, 2021 for purely journalistic reasons. *See* D.E. 37 at 3 (noting that a tipster reported that he/she "believed Horn was inside the Capitol as a journalist"); *id.* at 3 (referencing a Facebook post of Horn's in which he said he went to the Capitol that day "not to protest but to accurately document and record a significant event which was taking place" (quotation marks and citation omitted)).

While there may have been some individuals who went to the Capitol "to stop the lawful tabulation of the electoral votes and the certification of a democratically elected candidate for President of the United States," *id.* at 1, Mr. Horn was *not* one of them. And because § 3142(g)(1) requires an "individualized assessment" of the nature and circumstances of the offenses at issue, Mr. Horn believes his charges, which are largely trespassory in nature, weigh in favor of release on minimal conditions. *See United States v. Christian*, No. 1:20-CR-00019-DKC-1, 2020 WL 1676102, at *2 (D. Md. Apr. 6, 2020). *See also United States v. Stone*, 608

F.3d 939, 946 (6th Cir. 2010) (stating that for cases "involving multiple defendants who are not necessarily similarly situated, the dangerousness inquiry must be an individualized one"); *United States v. Fairlamb*, 535 F. Supp. 3d 30, 44 (D.D.C. 2021) (noting that "[t]he Bail Reform Act . . . calls for close analysis of the relevant factors and evidence in an individual case").

Concerning the weight of the evidence against Mr. Horn, multiple courts have held that § 3142(g)(2) is the *least* important factor in the pretrial release and detention analysis. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (citing *United States v. Alston*, 420 F.2d 176, 179 (D.C. Cir. 1969)). The reason being, according to the Ninth Circuit, is that the Bail Reform Act "neither requires nor permits a pretrial determination that the person is guilty." *Motamedi*, 767 F.2d at 1408. Thus, while the evidence against Mr. Horn as to the trespassory charges may be significant, that alone should be the least important factor to be considered by the Court in deciding what conditions of release are appropriate in this matter.

As to the remaining § 3142(g) factors, Mr. Horn would again emphasize that he is a 23-year-old[1] college graduate with no criminal record. He is gainfully employed, and with respect to this case, he has cooperated with every request law enforcement has made to him, from giving an unprotected statement at an interview with the FBI to voluntarily appearing and surrendering to the FBI just prior to his initial appearance in North Carolina. The only exception to Mr. Horn's cooperation is that he has refused, as the Constitution allows, to enter into an agreement with the government that would require him to plead guilty.

In its attempt to justify the firearm restriction under § 3142(g), the government cites *United States v. Smedley*, 611 F. Supp. 2d 971 (E.D. Mo. 2009). However, the defendant in *Smedley* was charged with serious felony sex offenses which carried mandatory minimum terms

---

[1] In his initial motion, undersigned counsel mistakenly reported that Mr. Horn is 24 years old. *See* D.E. 35 at 1.

of imprisonment—not misdemeanor trespassory offenses. Mr. Horn is not under indictment for a felony; nor is he a sex offender. These differences make the § 3142(g) analysis in *Smedley* more than distinguishable from that at issue in Mr. Horn's case. While prohibiting an individual accused of a serious sex crime facing a substantial term of imprisonment from having a gun might make sense, the same does not hold true here.

*(III) Probation Concerns v. Constitutional Rights*

Finally, Mr. Horn appreciates the government's concern for the potential impact on probation officers' safety posed by individuals on pretrial release possessing firearms. *See* D.E. 37 at 9, 12–13. But, while this concern may be valid and justified in *many* cases, he respectfully believes it is not warranted here for the reasons set forth above and in his motion at D.E. 35 concerning the § 3142(g) factors as applied to this case *individually*.

Again, Mr. Horn is very different than the average federal criminal defendant. *See* United States Sentencing Commission, *The Criminal History of Federal Offenders* 2 (May 2018), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180517_criminal-history.pdf (providing that, for fiscal year 2016, 72.8% of federal offenders "had been convicted of a prior offense"). With no criminal history, the risk posed to a probation officer's safety by Mr. Horn is simply not the same as that presented by most other federal offenders. *See* § 3142(g)(3)(A) (specifically citing an individual's "criminal history" as a factor that must be considered in the pretrial release and detention analysis).

As such, the need for the firearm restriction imposed in the vast majority of federal criminal cases, i.e. officer safety, simply does *not* exist in this case. Thus, the restriction as applied here infringes upon Mr. Horn's Second Amendment right to possess a weapon for self-defense purposes. And in doing so, it violates "the general principle that punishment can only

follow a determination of guilt after trial or plea." *See Bell v. Wolfish*, 441 U.S. 520, 535 n.17 (1979). For these reasons, he asks the Court to reject the government's arguments and find that the firearm restriction as applied in this *particular* case is unnecessary and unlawfully infringes upon Mr. Horn's constitutional rights.

Respectfully submitted this 21st day of January, 2022.

*/s/ Marshall H. Ellis*
MARSHALL H. ELLIS
Hornthal, Riley, Ellis & Maland, LLP
301 East Main Street
Elizabeth City, NC 27909
Telephone: 252-335-0871
Fax: 252-335-4223
Email: mellis@hrem.com
N.C. State Bar No. 47720
Retained Counsel for the Defendant

*/s/ Charles R. Haskell*
Charles R. Haskell
LAW OFFICES OF CHARLES R. HASKELL, P.A.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: charles@charleshaskell.com
DC Bar No. 888304007
Retained Counsel for the Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

MICHAEL GORDON JAMES
DOJ-USAO
Terry Sanford Federal Building
310 New Bern Avenue
Suite 800
Raleigh, NC 27601-1461
919-856-4530
Email: mike.james@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on January 21, 2022, using the CM/ECF system which will send notification of such filing to the above.

    This the 21st day of January, 2022.

        */s/ Marshall H. Ellis*
        MARSHALL H. ELLIS
        Hornthal, Riley, Ellis & Maland, LLP
        301 East Main Street
        Elizabeth City, NC 27909
        Telephone: 252-335-0871
        Fax: 252-335-4223
        Email: mellis@hrem.com
        N.C. State Bar No. 47720
        Retained Counsel for the Defendant

        */s/ Charles R. Haskell*
        CHARLES R. HASKELL
        LAW OFFICES OF CHARLES R. HASKELL, P.A.
        641 Indiana Ave. NW
        Washington, DC 20004
        (202) 888-2728
        Email: charles@charleshaskell.com
        DC Bar No. 888304007
        Retained Counsel for the Defendant