UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NO. 1:21-CR-00301-TJK-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN ETHAN HORN,<br><br>*Defendant.* | DEFENDANT'S MOTION<br>TO COMPEL DISCOVERY |

Defendant Stephen Ethan Horn, by and through undersigned counsel, moves this Court to compel the government to disclose information and material concerning the application of the Department of Justice's First Amendment policies to this case. Mr. Horn is an independent, multimedia journalist who entered Capitol grounds on January 6, 2021 for strictly newsgathering purposes. While the largely uncontested facts of his case support this claim, the government nonetheless continues to prosecute him for this conduct that is protected by the First Amendment.

The government's own policies, however, provide that prosecutions against journalists may only be initiated after "first providing notice to the Director of the Office of Public Affairs and obtaining the express authorization of the Attorney General." 28 C.F.R. § 50.10(f)(3). In Mr. Horn's case, the government has yet to produce *any* discovery material documenting these requirements and describing the procedures that were followed in obtaining the Attorney General's permission to charge Mr. Horn. As such, he moves the Court, under Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, to compel the government to disclose such material.

1

## I. FACTUAL AND PROCEDURAL HISTORY

On April 13, 2021, Mr. Horn was named in a four-count information charging him with four misdemeanor offenses: (i) entering and remaining in a restricted building, in violation of 18 U.S.C. § 1752(a)(1); (ii) disorderly and disruptive conduct in a restricted building, in violation of 18 U.S.C. § 1752(a)(2); (iii) disorderly and disruptive conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (iv) parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).[1] The charges stem from events that took place at the United States Capitol on January 6, 2021.

Mr. Horn is a 24-year-old resident of the Eastern District of North Carolina with no criminal record. He graduated from Thomas Edison State University in 2018 with a BSBA in General Management and is currently employed as a software engineer for a company based in Wake Forest, North Carolina. In his free time, Mr. Horn serves as an independent, multimedia journalist. *See, e.g.*, https://twitter.com/stephenehorn (Twitter account for Stephen Horn, which has a total of 4,776 followers as of Aug. 18, 2022).

Mr. Horn's interest in current events took him to Washington, D.C. in early January 2021. Mr. Horn specifically traveled to D.C. to observe the highly anticipated rally planned by former President Donald J. Trump and his supporters that concerned the results of the 2020 election. While Mr. Horn was there and now needless to say, things got out of hand.

When it became apparent that the rally was going to turn into something more, Mr. Horn the journalist was prepared. He had gone to D.C. that day equipped with a video camera. Mr. Horn activated this camera and recorded most of what he proceeded to witness on January 6, 2021, including events that took place in and around the Capitol grounds. By entering the

---

[1] On February 25, 2022, the government filed a superseding criminal information that amended the wording of the charged counts but did *not* alter the substance of these charges. *See* D.E. 41.

Capitol, however, Mr. Horn's *individual* purpose was not to *participate* in the events surrounding a potential challenge to the certification of the electoral college—but rather to *document* it, so that he and the American people would be able to better understand exactly what transpired that day.

Mr. Horn has consistently maintained that he entered the Capitol on January 6, 2021 for strictly newsgathering purposes. To that end and upon his return to North Carolina, he posted the approximately two-hour long footage of what he witnessed that day to his Facebook and Rumble[2] accounts with the following caption:[3]

> I was in DC today when the capitol was stormed. This is the full, unedited footage I took. It contains mature content. A few notes about what I witnessed:
> The people inside the capitol were not, by and large, antifa. If there were antifa involved in the criminality that occurred, they only formed a small percentage.
> This was not a peaceful protest. I saw many instances of pushing against police officers, as well as at least one instance where a barrage of projectiles was thrown. Once we were inside, it seemed there were at least as many in the crowd trying to actively prevent harm to police officers as there were who were trying to attack them or push them back.
> I was a little surprised at the lack of property destruction I witnessed, compared to some of the left wing riots in Raleigh[, North Carolina] that happened this year. While I did see a broken mirror and other destruction in Rep. Pelosi's office, I did not see much destruction for destruction's sake.
> I did not see the incident in which a woman was shot by capitol [police] (now ID'd as Ashli Babbitt), I did see a man who appeared to have fallen from some height and was laying on an improvised stretcher. Someone who appeared to be examining him said he had broken both his legs. I don't know if this was accurate, or if he ended up being one of the three others confirmed to have died in "medical emergencies" at the scene.

---

[2] Rumble is an online video sharing platform similar to YouTube. *See* SMALL BUSINESS TRENDS, *What is Rumble?*, https://smallbiztrends.com/2022/02/what-is-rumble.html (Feb. 21, 2022).

[3] On January 11–12, 2021, Mr. Horn also posted a Twitter thread documenting his January 6, 2021 experience, which included clips of the full video posted to Facebook and Rumble. *See* https://twitter.com/stephenehorn/status/1348723442972053506?s=20&t=QhSz6g2PROjr9ekTqVDBpw.

> I did not enter the capitol building as part of the protest, or for cheap thrills, but to accurately document and record a significant event which was taking place. Feel free to share, download, [or] repost this video or any clip from it.

*See* Exhibit One, Stephen Horn's Facebook and Rumble Posts. *See also* Charles Duncan, *N.C. man claiming to be independent journalist during Capitol riot pleads not guilty*, SPECTRUM NEWS, available at https://spectrumlocalnews.com/nc/charlotte/news/2022/01/10/north-carolina-man-admits-he-was-in-the-capitol-during-jan--6-attack--pleaded-not-guilty (Jan. 10, 2022) (interview of Mr. Horn in which he again stated that he went to the Capitol "to document what was happening as an independent journalist").

Since Mr. Horn made these initial posts publicly available, Mr. Horn's video journalism related to January 6, 2021 has received over 1,000,000 combined views across several platforms.

Also after he returned to North Carolina, Mr. Horn contacted both the Federal Bureau of Investigation (FBI) and the North Carolina Department of Justice (NCDOJ) to inform these authorities that he possessed "footage of crimes which were committed at the US Capitol on January 6th." *See* Exhibit Two, Horn's Tips to FBI and NCDOJ. Mr. Horn offered this footage to the authorities in an effort to assist them with investigating the crimes that were committed at the Capitol. *See id.*

The FBI eventually contacted Mr. Horn on January 15, 2021. Mr. Horn cooperated with the FBI and agreed to an interview with agents at its Cary, North Carolina field office on February 24, 2021. The information he provided during that interview, as well as other evidence collected by the FBI, corroborated Mr. Horn's position that he entered the Capitol for purely journalistic reasons. *See* D.E. 1-1 at 2 (affidavit submitted in support of criminal complaint citing a tip from an individual who believed "HORN was inside the U.S. Capitol as a journalist").

Despite having this clear, uncontroverted information, the government proceeded to charge Mr. Horn with four different crimes. Mr. Horn has pled "not guilty" to all four charges, and the parties have agreed to delay further proceedings in order to give Mr. Horn and undersigned counsel sufficient time to review the *vast* amount of discovery material that is being provided by the government through two different third-party vendors on an ongoing basis.

In September 2021, Mr. Horn submitted an informal discovery request to the government for information pertaining to the decision to prosecute him, given his status as a journalist and his clear-cut motivations for attending the January 6 events. *See* Exhibit Three, Emails Between Counsel. In response, the government responded as follows:

> You can tell Mr. Horn this: the Attorney General recently issued a memorandum on "Use of Compulsory Process to Obtain Information from, or Records of, Members of the News Media." This memorandum and the applicable regulations relating to members of the news media, including 28 C.F.R. sec. 50.10, are binding upon all Department attorneys. Like all other components within the Department, the U.S. Attorney's Office for the District of Columbia is ensuring that these policies – in Mr. Horn's case and all others handled by its prosecutors – are scrupulously followed. Likewise, the Department institutes training, accountability, and disciplinary measures that reinforce the importance of adherence to such requirements. Department attorneys who fail to comply with the relevant policies can be subject to discipline and administrative sanction.

*See* Exhibit Three at 3.

On February 25, 2022 and after a different attorney substituted as counsel for the government in this matter, Mr. Horn renewed his request for the government to provide additional information regarding the Department's First Amendment policies as applied to Mr. Horn's case. *Id.* at 2. The government maintained its position from September 2021, and *no* additional information has since been provided. *Id.* at 1.

Mr. Horn now seeks an order from this Court compelling the production of such materials and information from the government. This information is material to the issues of guilt and punishment, and as such, *Brady* requires it to be produced. In further support, he states as follows:

## II. ARGUMENT

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. amend. V. In criminal cases, the Supreme Court has interpreted this language to require that the government disclose evidence that is "material either to guilt or to punishment" of the defendant. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Additionally, Rule 16 of the Federal Rules of Criminal Procedure requires the government, upon the defendant's request, to "permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and . . . the item is material to preparing the defense." FED. R. CRIM. P. 16(a)(1)(E). While the rule "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case," the Supreme Court has recognized that the government's *Brady* obligations "override[] th[is] statutorily created work-product privilege." *United States v. Edwards*, 777 F. Supp. 2d 985, 995 (E.D.N.C. 2011) (citing *United States v. Armstrong*, 517 U.S. 456, 474–75 (1996) (Breyer, J., concurring in part and concurring in the judgment) (discussing the general understanding that *Brady* overrides the work-product privilege)).

6

A defendant establishes a *Brady* violation by showing three things:

    (i) the material at issue is favorable to the accused;

    (ii) the government possesses the material but has not disclosed it; and

    (iii) the government's failure to disclose the material will prejudice the accused.

*United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017) (citations omitted).

"To satisfy the prejudice element, the evidence must be material[,]" meaning "there is a 'reasonable probability' that the result of the" proceedings would have been different had the evidence been disclosed. *Id.* "When examining reasonable probability, the Court must not view the evidence in isolation, but rather must consider the nondisclosure dynamically and take into account the numerous predictable impacts the evidence could have on trial strategy." *Id.* at 1067 (citations and quotation marks omitted).

Here, the material at issue is *all* information and documentation pertaining to the procedures followed by the government in obtaining "the express authorization of the Attorney General" to "file an information . . . against [Mr. Horn,] a member of the news media[,]" for offenses he is "suspected of having committed in the course of, or arising out of[,] newsgathering activities." *See* 28 C.F.R. § 50.10(f)(3). This evidence satisfies all three of the *Brady* criteria listed above.

First, this evidence is favorable to Mr. Horn in that it likely corroborates Mr. Horn's position that his newsgathering activity on January 6, 2021 was protected by the First Amendment, which prohibits laws that "abridg[e] the freedom . . . of the press." U.S. CONST. amend. I. The fact that the above-referenced policy even exists demonstrates the importance for both prosecuting entities and courts to "strike the proper balance" between "effective law enforcement" and the need to "safeguard[] the essential role of the free press in fostering

government accountability and an open society." 28 C.F.R. § 50.10(a)(2); *see also Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) (acknowledging that newsgathering activities qualify for First Amendment protection and adding that "without some protection for seeking out the news, freedom of the press could be eviscerated"). To that end, the policy explicitly states that its purpose is "to provide protection to members of the news media from certain law enforcement tools, whether criminal or civil, that might unreasonably impair newsgathering activities." § 50.10(a)(1).

In doing so, it provides a number of specific protections, procedural and otherwise, to members of the news media. Relevant here, the policy states as follows:

> No member of the Department [of Justice] shall . . . file an information, against a member of the news media for any offense that he or she is suspected of having committed in the course of, or arising out of newsgathering activities, without first providing notice to the Director of the Office of Public Affairs and obtaining the express authorization of the Attorney General.

§ 50.10(f)(3). Despite being a member of the news media, Mr. Horn has not received *any* documentation from the government showing that these procedures were followed. Because such documentation would corroborate his position that his newsgathering activity on January 6, 2021 was protected by the First Amendment, that evidence is favorable to Mr. Horn.

The remaining two *Brady* criteria are easily satisfied. The very existence of the policy shows that the material at issue *is* in the government's possession. And the emails contained in Exhibit Three confirm such existence and that the government has *not* disclosed this material. *See* Exhibit Three.

Finally, the government's failure to disclose this evidence is prejudicial. As discussed in *Borda*, the prejudice inquiry requires this Court to assess "the *numerous* predictable impacts the

evidence could have on trial strategy." 848 F.3d at 1067 (emphasis added). Here, the evidence could provide a basis for Mr. Horn to move to dismiss the charges under a First Amendment theory, or possibly even the basis for a selective-prosecution claim. *See Lovell v. City of Griffin, Ga.*, 303 U.S. 444 (1938) (reversing a conviction for violating an ordinance prohibiting city-wide distribution of "literature of any kind" without a permit on grounds that the ordinance violated the First Amendment right to a free press, a right that is "fundamental" and "personal"). *See also Armstrong*, 517 U.S. at 464–68 (reviewing "the requirements to prove a selective-prosecution claim" and stating the general rule "that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification" (citation and quotation marks omitted)).

Furthermore, the evidence will have a tremendous impact on Mr. Horn's trial strategy, as the material at issue goes to the crux of *his story* in this case, i.e. that he is a member of the news media who entered Capitol grounds on January 6, 2021 not "for cheap thrills, but to accurately document and record a significant event which was taking place." *See* Exhibit One.

Finally, even if the evidence at issue had nothing to do with the issue of guilt, it still constitutes *Brady* material which must be disclosed because it is no doubt, at the very least, material to the issue of punishment. *See Brady*, 373 U.S. at 87 (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material *either* to guilt *or to punishment*" (emphases added)). *See also* 18 U.S.C. § 3553(a) (listing, as factors a court must consider in fashioning an appropriate sentence, "the nature and circumstances of the offense and the history and characteristics of the defendant"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the

background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence").

### III. CONCLUSION

A regulation governing the Department of Justice extends special protection from "law enforcement tools" to members of the news media in order to "safeguard[] the essential role of the free press in fostering government accountability and an open society." To date, the government has not produced *any* discovery showing that such protection was extended to Mr. Horn, a member of the news media whose newsgathering activities on January 6, 2021 were protected by the First Amendment. Mr. Horn now asks the Court to order the government to produce such material. In the alternative and if no such material exists, Mr. Horn asks the Court to order the government to show cause as to why the Department's First Amendment policies were not followed in this case.

Respectfully requested this 19th day of August, 2022.

*/s/ Marshall H. Ellis*
MARSHALL H. ELLIS
Hornthal, Riley, Ellis & Maland, LLP
301 East Main Street
Elizabeth City, NC 27909
Telephone: 252-335-0871
Fax: 252-335-4223
Email: mellis@hrem.com
N.C. State Bar No. 47720
Retained Counsel for the Defendant

*/s/ Charles R. Haskell*
Charles R. Haskell
LAW OFFICES OF CHARLES R. HASKELL, P.A.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: charles@charleshaskell.com
DC Bar No. 888304007
Retained Counsel for the Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

MICHAEL GORDON JAMES
DOJ-USAO
Terry Sanford Federal Building
310 New Bern Avenue
Suite 800
Raleigh, NC 27601-1461
919-856-4530
Email: mike.james@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on August 19, 2022, using the CM/ECF system which will send notification of such filing to the above.

    This the 19th day of August, 2022.

    */s/ Marshall H. Ellis*
MARSHALL H. ELLIS
Hornthal, Riley, Ellis & Maland, LLP
301 East Main Street
Elizabeth City, NC 27909
Telephone: 252-335-0871
Fax: 252-335-4223
Email: mellis@hrem.com
N.C. State Bar No. 47720
Retained Counsel for the Defendant

    */s/ Charles R. Haskell*
CHARLES R. HASKELL
LAW OFFICES OF CHARLES R. HASKELL, P.A.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: charles@charleshaskell.com
DC Bar No. 888304007
Retained Counsel for the Defendant