UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-301 (TJK) |
| | : | |
| STEPHEN HORN, | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL

The Court should deny defendant Stephen Horn's ("Horn") Motion to Compel disclosure of the government's internal documents, reports, or memoranda related to the Department of Justice's news media policy, 28 C.F.R. § 50.10, and to prosecute him for his unlawful entry into the United States Capitol on January 6, 2021. Horn is not entitled to disclosure of the government's internal deliberations under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny because Section 50.10, even if applicable here, is not a substantive rule giving rise to any enforceable rights for noncompliance and even if Horn were a member of the news media under Section 50.10, the First Amendment does not bar his prosecution. Nor does Rule 16 of the Federal Rules of Criminal Procedure authorize discovery or inspection of reports, memoranda, or other internal government documents made, in relevant part, by an attorney for the government in connection with the investigation or prosecution of the case.

## BACKGROUND

### Factual Background

The United States Capitol is a federal building and on January 6, 2021 it was closed to the public. A joint session of the United States Congress met at the United States Capitol (hereinafter "the Capitol") that day to certify the vote of the Electoral College. ECF No. 1-1, Statement of

1

Facts at 1. "Rioters, attempt[ed] to disrupt the Joint Session of Congress" by breaking into the Capitol building and once inside rioters "vandalized and stole property and ransacked offices." See Examining the U.S. Capitol Attack, A Review of the Security, Committee on Homeland Security and Governmental Affairs Committee on Rules and Administration Report (June 8, 2021) https://www.rules.senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf. (last viewed August 25, 2022).

Horn is one of hundreds, if not thousands of individuals, who entered the Capitol unlawfully that day. Horn stepped over a fence on the Capitol grounds that warned trespassers not to go past that point before he entered the Capitol. While inside the Capitol, Horn stood on a monument with one hand on the wall as he held a cellphone *See* ECF No. 1-1, Statement of Facts at 4. Horn joined the chant "U.S.A., U.S.A." with others as he roamed throughout the Capitol for almost two hours. *Id.* at 3.

On January 11, 2021, a New York Times social media page published a picture, later identified by tipsters, of Horn photographed in the Capitol as he stood on a monument above others dressed in a black helmet, black jacket, back gloves, and carrying a backpack as he held the cellphone. ECF No. 1-1, Statement of Facts at 2. One tipster stated he/she saw the New York Times Magazine social media page and was "95% sure" the picture depicted Horn and added that he/she believed Horn was inside the Capitol as a journalist but was unaware of any media credentials Horn possessed.



*Id.* (photograph of Horn in the red circle as he appeared in the Capitol unlawfully on January 6, 2021).

Between January 11, 2021, and January 19, 2021, Federal Bureau of Investigation ("FBI") agents viewed Horn's publicly available Facebook page and reviewed Horn's numerous posts, including a post in which Horn admitted being inside the Capitol but explained that he was there not to protest but to "accurately document and record a significant event which was taking place." *Id.* at 3. Agents downloaded the approximate two-hour in length video. *Id.* Although video footage does not depict Horn holding the camera, based on conversations between Horn and FBI agents, the agents were familiar with Horn's voice and identified Horn's voice on video footage posted on Horn's Facebook page in which Horn, while in the Capitol, chanted in a raised voice "U.S.A." *Id.*

On February 24, 2021, Horn, with counsel present, gave a voluntary and unprotected interview with the FBI. *Id.* Horn admitted that he stepped over a fence on the Capitol grounds that warned trespassers not to go past that point, admitted being in the Capitol on January 6, 2021, admitted that he stood on a monument inside the Capitol with one hand on the wall as he held a cellphone, and admitted he wore a clothing consistent with the picture in the New York Times social media online magazine as he stood on the monument. *Id.* at 4.

**Relevant Procedural History**

On March 29, 2021, the United States issued a criminal complaint that charged Horn with knowingly entering or remaining in a restricted building or grounds without lawful authority, in violation of 18 U.S.C. § 1752(a)(1); disorderly and disruptive conduct in a restricted building on or grounds, in violation of 18 U.S.C. §1752(a)(2); violent entry and disorderly conduct on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(2)(D); and parading, demonstrating, or picketing in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G), and the Court issued an accompanying arrest warrant.  ECF Nos. 1, 7.

On April 13, 2021, the government filed a four-count information that charged Horn with the aforementioned offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104.[1]  ECF No. 5.

On September 14, 2021, Horn requested information regarding the Department of Justice's decision to prosecute him.  In response, the government informed Horn (through counsel) that the Department of Justice followed all regulations related to members of the news media when it decided to charge him.  ECF No. 45-3 at 3.  On February 25, 2022, Horn made an additional informal request for information underlying the Department of Justice's decision to prosecute him.  On February 27, the undersigned informed Horn that the government's previous decision remained unchanged.  *Id.* at 1.

On August 19, 2022, Horn filed the instant Mot. to Compel.  ECF No. 45.

**ARGUMENT**

Horn moves under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, and under Rule 16 of the Federal Rules of Criminal Procedure, for disclosure of information regarding the

---

[1] The government later filed a superseding information that did not alter the charges.  ECF No. 41.

4

Department of Justice's compliance with 28 C.F.R. § 50.10, which pertains to the questioning, arresting, or charging of members of the news media. Horn states, "the government has yet to produce any discovery material documenting these requirements and describing the procedures that were followed in obtaining the Attorney General's permission to charge Mr. Horn." ECF No. 45 at 1. In support of the motion, Horn argues that disclosure of materials documenting the Department of Justice's compliance with Section of 50.10 is necessary to his defense because he was acting as "an independent multimedia journalist" on January 6, *id.*, and disclosure can support a possible motion to dismiss the information "under a First Amendment theory, or possibly even the basis for a selective-prosecution claim," *id.* at 9. As explained below, Horn's motion is meritless because under neither *Brady* nor Rule 16 is he entitled to disclosure of the Department of Justice's internal records.

      A.      **The Department of Justice's news media policy.**

The Department of Justice's news media policy is codified at 28 C.F.R. § 50.10, and amplified by Section 9-13.400 of the Justice Manual and the Attorney General's July 19, 2021, Memorandum, "Use of Compulsory Process to Obtain Information from, or Records of, Members of the News Media." Under § 50.10(f), Department employees must "first provid[e] notice to the Director of the Office of Public Affairs and obtain the express authorization of the Attorney General" before the employee: (1) "subject[s] a member of the news media to questioning"; (2) "seek[s] a warrant for an arrest, or conduct[s] an arrest, of a member of the news media"; or (3) "present[s] information to a grand jury seeking a bill of indictment . . . against a member of the news media"; in connection with "any offense" that the "member of the news media . . . is suspected of having committed in the course of, or arising out of newsgathering activities." 28 C.F.R. § 50.10(f)(1)–(3). The news media policy "*is not intended to, and does not, create any*

*right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.*" 28 C.F.R. § 50.10(j) (emphasis added). Instead, the policy provides for an internal enforcement mechanism. *See id.* § 50.10(i) ("Failure to obtain the prior approval of the Attorney General, as required by this policy, may constitute grounds for an administrative reprimand or other appropriate disciplinary action.").

> **B.** ***Brady* does not require disclosure of the government's internal deliberations concerning adherence to the Department of Justice's news media policy prior to the initiation of charges against Horn.**

Horn's primary argument is the government has not provided him with material that establishes that the government adhered to the news media policy when it made the decision to charge him. Horn asserts he needs the information because it may corroborate other information relevant to his newsgathering protection defense under the First Amendment and may serve as the basis for a motion "to dismiss the charges under a First Amendment theory, or possibly even the basis for a selective-prosecution claim[,]" and that it may be relevant to the issue of punishment at sentencing if he is convicted. ECF No 45, Mot. to Compel, at 7-10.

Horn is not entitled to any internal governmental memoranda related to its evaluation of Horn's status as a potential member of the news media because regulations such as Section 50.10 "are not substantive rules that create individual rights; they are merely statements of internal departmental policy." *See United States v. Manafort*, 312 F. Supp. 3d 60, 75-79 (D.D.C. 2018) (denying Manafort's motion to dismiss the indictment on his claim that the government violated the Department of Justice's Special Counsel regulations because such regulations are not substantive rules); *see also United States v. Blackley*, 167 F.3d 543, 549 (D.C. Cir. 1999) (holding "violations of Manual policies by DOJ attorneys or other federal prosecutors afford a defendant

no enforceable rights."); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006)(holding "[t]he [28 C.F.R. § 50.10] guidelines not required by any constitutional or statutory provision [], exist to guide the Department's exercise of its discretion in determining whether and when to seek the issuance of subpoenas to reporters, not to confer substantive or procedural benefits upon individual media personnel[,]" because "the exercise of prosecutorial discretion is at the very core of the executive function[,] and [c]ourts consistently hesitate to attempt a review of the executive's exercise of that function."*Id*. (citing *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996)). Other courts have also noted that the Department's news media policy does not create or recognize any legally enforceable right in any person. *See In re Special Proceedings*, 373 F.3d 37, 44 n. 3 (1st Cir. 2004) (noting, in relevant part, that 28 C.F.R. § 50.10 is a DOJ guideline that binds all DOJ "members" and that its principles do not create legally enforceable rights in any person); *In re Grand Jury Subpoena American Broadcasting Companies, Inc.*, 947 F. Supp. 1314, 1322 (D. Ark. 1996) (declining to quash subpoena on an alleged failure to comply with 28 C.F.R. § 50.10 because Section 50.10(e) by its own terms, confers no rights on media witnesses).

Further, Horn's newsgathering-based First Amendment defense fails because even if Horn were a member of the news media, such a status does not confer immunity from prosecution. *See Branzburg v. Hayes*, 408 U.S. 665, 691 (1972); *see also See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (stating that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news"). Accordingly, even if the Department of Justice did not comply with Section 50.10 – which the Department previously informed Horn that it did – disclosure of internal memoranda or records reflecting as such would not bar his prosecution.

no enforceable rights."); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1153 (D.C. Cir. 2006)(holding "[t]he [28 C.F.R. § 50.10] guidelines not required by any constitutional or statutory provision [], exist to guide the Department's exercise of its discretion in determining whether and when to seek the issuance of subpoenas to reporters, not to confer substantive or procedural benefits upon individual media personnel[,]" because "the exercise of prosecutorial discretion is at the very core of the executive function[,] and [c]ourts consistently hesitate to attempt a review of the executive's exercise of that function."*Id*. (citing *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996)). Other courts have also noted that the Department's news media policy does not create or recognize any legally enforceable right in any person. *See In re Special Proceedings*, 373 F.3d 37, 44 n. 3 (1st Cir. 2004) (noting, in relevant part, that 28 C.F.R. § 50.10 is a DOJ guideline that binds all DOJ "members" and that its principles do not create legally enforceable rights in any person); *In re Grand Jury Subpoena American Broadcasting Companies, Inc.*, 947 F. Supp. 1314, 1322 (D. Ark. 1996) (declining to quash subpoena on an alleged failure to comply with 28 C.F.R. § 50.10 because Section 50.10(e) by its own terms, confers no rights on media witnesses).

Further, Horn's newsgathering-based First Amendment defense fails because even if Horn were a member of the news media, such a status does not confer immunity from prosecution. *See Branzburg v. Hayes*, 408 U.S. 665, 691 (1972); *see also See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) (stating that "generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news"). Accordingly, even if the Department of Justice did not comply with Section 50.10 – which the Department previously informed Horn that it did – disclosure of internal memoranda or records reflecting as such would not bar his prosecution.

Additionally, Horn's argument that he needs the government's internal records because the records would be relevant to determining his punishment at sentencing fails, as a conviction would necessarily mean the factfinder determined that Horn possessed the requisite *mens rea* to commit the offense(s) and therefore a dual purpose – to violate the law and to gather news – would not warrant disclosure of the government's internal deliberative records or memorandum. In *United States v. Herrera*, No. 21-cr-619 (BAH), the Court addressed the issue of dual purpose in the trial of a defendant charged with obstructing an official proceeding in violation of 18 U.S.C. § 1512(c)(2) during the January 6, 2021 attack on the U.S. Capitol and instructed the jury that, "[w]hile the defendant must act with intent to obstruct the official proceeding, this need not be his sole purpose. A defendant's unlawful intent to obstruct justice is not negated by the simultaneous presence of another purpose for his conduct." *Id.*, Docket Entry 65 at 7 (D.D.C. Aug. 29, 2022). As to such, Horn is not entitled to the relief he seeks.[*]

    **C.**    **Rule 16 does not entitle Horn to disclosure of the Department of Justice's decision whether to afford Horn member of the news media status for purposes of the news media policy.**

Rule16 also does not entitle Horn to disclosure of information about the news media policy or its application to him in this case. Rule 16 protects a defendant by compelling the government's disclosure of evidence material to the alleged criminal charges. *Yates v. United States*, 574 U.S. 528, 539 (2015). Under Rule 16, the government must disclose five types of evidence to a defendant: (1) the defendant's oral, written, or recorded statements, Fed. R. Crim. P. 16(a)(1)(A)–(B); (2) the defendant's prior criminal record, Fed. R. Crim. P. 16(a)(1)(D); (3) particularized

---

[*] Horn may argue at trial that his belief that he was acting as a member of media undermines evidence tending to show that he had an adequate *mens rea* to violate any of the four statutes under which he is charged. If he presses that argument, the government may request a dual intent instruction, which makes clear that a defendant who holds more than one intent violates the law where his intent, in part, is culpable.

documents and objects, "if the item is within the government's possession, custody, or control," Fed. R. Crim. P. 16(a)(1)(E); (4) the results or reports of any physical or mental examination, test, or experiment, Fed. R. Crim. P. 16(a)(1)(F); and (5) a written summary of expert testimony that the government intends to use during its case-in-chief at trial, Fed. R. Crim. P. 16(a)(1)(G). *See United States v. Apodaca*, 287 F. Supp. 3d 21, 38 (D.D.C. 2017); *see also United States v. Sutton*, No. CR 21-0598-1 (PLF), 2022 WL 3134449, at *4 (D.D.C. Aug. 5, 2022). Rule 16, however, does not operate as a wholesale means to examine "the prosecutor's file." *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 168 (D.D.C. 2020). The government's obligation to disclose material must be related to material that refutes the government's case-in-chief and not "'to establishment of an independent ... bar to the prosecution.'" *Apodaca*, 287 F. Supp. 3d at 39 (quoting *United States v. Rashed,* 234 F.3d 1280, 285 (D.C. Cir. 2000)).

Here, Horn is not entitled to the relief he seeks because the material he seeks does not refute the charges against him but instead relates to whether there has been compliance with the Department of Justice's news media policy, which he incorrectly asserts would serve as an independent bar to his prosecution. More importantly, the material he seeks is barred from disclosure under Rule 16(a)(2). Rule 16(a)(2) provides:

> Except as permitted by Rule 16(a)(1)(A)-(D), (F), and (G), this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.

Fed. R. Crim. P. 16(a)(2). To overcome this straightforward bar to the relief he seeks, Horn cites to *Brady*, which as discussed above provides him no relief.

9

**CONCLUSION**

For the above-stated reasons, the Court should deny Horn's motion.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By: */s/ Michael G. James*
        MICHAEL G. JAMES
        Assistant United States Attorney
        N.Y. Reg. No. 2481414
        Office of the United States Attorney
        Eastern District of North Carolina
        (on detail to the USAO-DC)
        150 Fayetteville Street, Suite 2100
        Raleigh, NC 27601
        Mike.James@usdoj.gov
        Telephone: (919) 856-4530