UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NO. 1:21-CR-00301-TJK-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN ETHAN HORN,<br><br>*Defendant.* | SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY |

Defendant Stephen Ethan Horn, by and through undersigned counsel, submits this supplemental memorandum in support of his motion to compel discovery (D.E. 45). Based on the government's representations and as explained herein, Mr. Horn believes in good faith that the requested material exists and is in the government's possession. At the September 26, 2022 status conference in this case, the Court did not rule on or hear arguments pertaining to his motion to compel the material but invited the parties to conduct and submit supplemental research concerning the motion. To that end, Mr. Horn submits the instant memorandum in support of his motion to compel and, in doing so, incorporates herein by reference all arguments he raised in the previous filings at D.E. 45 and 47.

   *(I) The Scope of Potential Brady Material is Very Broad and Includes Any Information that is Favorable to Mr. Horn's Defense.*

Under the Fifth Amendment, as interpreted by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83 (1963), the government "must always produce any potentially exculpatory *or otherwise favorable evidence* without regard to how the withholding of such evidence might be viewed—with the benefit of hindsight—as affecting the outcome of the trial." *United States v.*

1

*Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) (emphasis added). Thus, whether disclosure is required is not a question of "whether the government thinks that disclosure of the information or evidence it is considering withholding might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed." *Id.*

Favorable material is "*any* information in the possession of the government—broadly defined to include all Executive Branch agencies—that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses." *Id.* (emphasis added). The material which must be produced under *Brady* need not itself be admissible at the defendant's trial. *See United States v. Bundy*, 968 F.3d 1019, 1040 n.8 (9th Cir. 2020). Instead, if the information at issue helps the defense, even if it solely relates not to "refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution," the material must be disclosed. *See United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000) (implying that Rule 16's required disclosures are limited to materials that involve the factual allegations of the government's case).

> *(II) If the Material Sought is Favorable to Mr. Horn's Defense, it Constitutes Brady Material Which Must Be Disclosed.*

Under the above principles, the scope of potential *Brady* material in any given case is very broad. If the material would help the defendant and his counsel with defending the case at trial or even *earlier*, it should be disclosed to the defense. *See, e.g.*, *Biles v. United States*, 101 A.3d 1012, 1020 (D.C. 2014) ("agree[ing] that the suppression of material information can violate due process under *Brady* if it affects the success of a defendant's pretrial suppression motion"); *United States v. Gamez-Orduno*, 235 F.3d 453, 461 (9th Cir. 2000) (holding that "[t]he suppression of material evidence helpful to the accused, *whether at trial or on a motion to suppress*, violates due process if there is a reasonable probability that, had the evidence been

disclosed, the result of the proceeding would have been different" (emphasis added)). And "[w]here doubt exists as to the usefulness of the evidence to the defendant, the government must resolve all such doubts in favor of full disclosure." *Safavian*, 233 F.R.D. at 17.

Here, it is difficult for Mr. Horn to assess whether the material sought would be useful to preparing his case for trial because the specific contents of the requested material are completely unknown to him. The government has stated that it complied with its First Amendment policies and procedures for members of the news media in Mr. Horn's case. *See* D.E. 46 at 7. However, *Brady* entitles Mr. Horn to far more information than simply the fact of compliance *if* the material at issue concerning these policies and procedures contains *anything* that could help with defending his case.

For example, this material may contain evidence suggesting that Mr. Horn is *not* a threat to national security or public safety and was not at the Capitol on January 6, 2021 to participate in an attempt to overturn the results of the 2020 Presidential Election—as he has consistently maintained. *Contra* D.E. 41 (superseding information alleging that Mr. Horn did, among other things, engage "in disorderly and disruptive conduct in" the Capitol "with the intent to impede, disrupt, and disturb the orderly conduct of a session of Congress or either House of Congress"). *See also* 28 C.F.R. § 50.10(a)(1) (citing "national security" and "public safety" versus "freedom of the press" and "freedom of members of the news media to investigate and report the news" as primary interests that were considered in promulgating the policy).

Additionally, the requested material could include records pertaining to other members of the news media that have been investigated and/or charged with crimes pertaining to the January 6, 2021 events at the Capitol. In a 2021 report made available to the public, the Department of Justice (DOJ) made the following announcement:

> In connection with the investigation into the January 6, 2021 attack on the U.S. Capitol, the Attorney General authorized the voluntary questioning of multiple members of the news media who were witnesses to serious criminal conduct, including violent assaults on law enforcement officers, or victims of and/or witnesses to targeted attacks on members of the news media during the Capitol breach.

*See* Department of Justice, *Department of Justice Use of Certain Law Enforcement Tools to Obtain Information from, or Records of, Members of the News Media; and Questioning, Arresting, or Charging Members of the News Media - Annual Report: Calendar Year 2021*, available at https://www.justice.gov/criminal-fraud/file/1534096/download.

Additional independent research reveals that there are members of the news media who were inside the Capitol or on its grounds on January 6, 2021 and have *not* been charged with any crimes related to such conduct. *See, e.g.*, VII Agency, *Anarchy in the USA: Revisit the Conversation with VII Photographers who Covered the Events in the Capitol*, https://viiphoto.com/resource/anarchy-in-the-usa-revisit-the-conversation-with-vii-photographers-who-covered-the-events-in-the-capitol/ (describing the experiences of four photographers who covered the January 6, 2021 events at the Capitol); Cameron Joseph, *'So, So Angry': Reporters Who Survived the Capitol Riot Are Still Struggling*, Vice News (July 6, 2021), https://www.vice.com/en/article/4avqqn/reporters-survived-capitol-riot-struggling (detailing the experiences of reporters who were at the Capitol on January 6, 2021).

These materials, coupled with the government's admission in this case, plainly reveal that the DOJ followed its First Amendment policies in investigating the January 6, 2021 events at the Capitol. And since Mr. Horn was charged with crimes relating to these events while other members of the media have not been charged, it is logical to conclude that the government has records within its possession that document *how* the policies were followed in Mr. Horn's case and *why* the decision was made to charge him with crimes when other members of the media

were not so charged. These records would be used as evidentiary support for a motion to dismiss Mr. Horn's charges under a selective prosecution claim brought pursuant to "the equal protection component of the Due Process Clause of the Fifth Amendment." *See United States v. Armstrong*, 517 U.S. 456, 464 (1996). This clause provides that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Oyler v. Boles*, 368 U.S. 448, 456 (1962)).

Here, the "other arbitrary classification" would be the government's choosing which members of the new media are free from prosecution based on their First Amendment right to report the news and which of them are not, such as Mr. Horn. *See Branzburg v. Hayes*, 408 U.S. 665, 681 (1972) (acknowledging that newsgathering activities qualify for First Amendment protection and adding that "without some protection for seeking out the news, freedom of the press could be eviscerated"); *Lovell v. City of Griffin, Ga.*, 303 U.S. 444 (1938) (stating that the First Amendment right to a free press is a right that is "fundamental" and "personal"). This random line-drawing treads upon a fundamental right protected by the Constitution, and for that reason, the Supreme Court has acknowledged that a selective prosecution claim is a valid defense to criminal charges in some cases. *See Armstrong*, 517 U.S. at 464–68.

While recognizing selective prosecution as a valid defense to criminal charges, the Supreme Court has also established that the bar to obtain discovery from the government in support of such claims is very high. *Id.* at 468–70. *Armstrong* held that a defendant must make "a credible showing" that "similarly situated persons" were treated differently for the government to be required to "assemble from its own files documents which might corroborate or refute the defendant's claim" that the decision to prosecute him was based on an unjustifiable standard. *Id.*

*Armstrong* and selective prosecution principles aside, Mr. Horn maintains that the material he currently seeks should be produced under *Brady* because it is favorable to his defense in that it: (i) likely contains information to be used in support of a pretrial motion or (ii) includes or may lead to admissible evidence that refutes the government's factual allegations contained in the superseding information. Even so, the information referenced above concerning uncharged members of the news media who were at the Capitol satisfies *Armstrong's* heightened standard. This information is "evidence of differential treatment of similarly situated members of" the news media exercising their fundamental right to report the news. *Id.* at 470. For that reason, *Armstrong* similarly requires the government to produce "all information and documentation pertaining to the procedures followed by the government in obtaining 'the express authorization of the Attorney General' to 'file an information . . . against [Mr. Horn,] a member of the news media[,]' for offenses he is 'suspected of having committed in the course of, or arising out of[,] newsgathering activities.'" *See* D.E. 45 at 7 (quoting 28 C.F.R. § 50.10(f)(3)).

> *(III) The DOJ's First Amendment Charging Policy and Procedures at Issue in Mr. Horn's Case Are Distinguishable from the Sample Charging Policy Cited by the Court During the September 26, 2022 Status Conference.*

Finally, Mr. Horn briefly addresses a hypothetical posed by this Court during the September 26, 2022 status conference. During that hearing and as the Court was announcing its request for supplemental briefing on Mr. Horn's motion to compel, the Court compared the First Amendment policy at issue in Mr. Horn's case with that of any prosecuting entity's policy that provides, by way of example, only theft crimes involving a threshold amount of loss should be prosecuted by that particular entity.

Mr. Horn would agree that, in a typical case, a defendant would not be entitled to discovery as to whether the prosecuting entity followed that policy in electing to bring charges

against the defendant. The reason, perhaps among others, is that the Constitution's separation of powers doctrine leaves such decisions within "the special province of the Executive Branch." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

However, a charging policy that draws a line at whom to prosecute based on an assessment of the seriousness of the offense is very different than a policy that draws a line based on the prosecuting entity's arbitrary decision as to which individuals—all of whom are engaging in the same conduct and exercising a constitutionally-protected right to report the news—are free from prosecution and which are not. The latter policy implicates the Constitution, which provides that the decision to prosecute cannot be based on an arbitrary classification, while the former does not. For this reason, Mr. Horn respectfully believes that the DOJ policy at issue in his pending motion to compel is wholly distinguishable from the example proffered by the Court at the September 26, 2022 hearing.

Respectfully submitted this 11th day of October, 2022.

*/s/ Marshall H. Ellis*
MARSHALL H. ELLIS
Hornthal, Riley, Ellis & Maland, LLP
301 East Main Street
Elizabeth City, NC 27909
Telephone: 252-335-0871
Fax: 252-335-4223
Email: mellis@hrem.com
N.C. State Bar No. 47720
Retained Counsel for the Defendant

*/s/ Charles R. Haskell*
Charles R. Haskell
LAW OFFICES OF CHARLES R. HASKELL, P.A.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: charles@charleshaskell.com
DC Bar No. 888304007
Retained Counsel for the Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

MICHAEL GORDON JAMES
DOJ-USAO
Terry Sanford Federal Building
310 New Bern Avenue
Suite 800
Raleigh, NC 27601-1461
919-856-4530
Email: mike.james@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on October 11, 2022, using the CM/ECF system which will send notification of such filing to the above.

    This the 11th day of October, 2022.

                                        ***/s/ Marshall H. Ellis***
                                        MARSHALL H. ELLIS
                                        Hornthal, Riley, Ellis & Maland, LLP
                                        301 East Main Street
                                        Elizabeth City, NC 27909
                                        Telephone: 252-335-0871
                                        Fax: 252-335-4223
                                        Email: mellis@hrem.com
                                        N.C. State Bar No. 47720
                                        Retained Counsel for the Defendant


                                        ***/s/ Charles R. Haskell***
                                        CHARLES R. HASKELL
                                        LAW OFFICES OF CHARLES R. HASKELL, P.A.
                                        641 Indiana Ave. NW
                                        Washington, DC 20004
                                        (202) 888-2728
                                        Email: charles@charleshaskell.com
                                        DC Bar No. 888304007
                                        Retained Counsel for the Defendant