**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 21-CR-301 (TJK)** |
| | : | |
| **STEPHEN HORN,** | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL DISCOVERY**

At the September 26, 2022 status hearing the Court permitted defendant Stephen Horn ("Horn") to supplement his motion (*see* Motion to Compel and Reply, ECF Nos. 45 & 47) with specific case law supporting Horn's argument that the Court should order the Department of Justice ("DOJ or the Department") to disclose its internal reports to determine DOJ's compliance with DOJ's policy regarding the questioning, arresting, or charging of members of the news media under 28 C.F.R. § 50.10. Horn's supplemental memorandum, ECF No. 49, fails to overcome the rigorous hurdle to obtain discovery of government internal reports that can support a selective prosecution claim and fails to cite to any case law entitling him to the relief he seeks. The Court should deny Horn's Motion to Compel.

**RELEVANT BACKGROUND**

The government incorporates by reference the procedural and factual history as detailed in its Memorandum in Opposition, ECF No. 46, to Horn's Motion to Compel. In sum, Horn, with rioters, entered the United States Capitol on January 6, 2021 via the Senate Wing Door. Prior to entering the Capitol, Horn stepped over signage that warned trespassers not to enter the area. While inside the Capitol Rotunda, Horn stood on a statue and braced himself against a wall with one hand as he filmed the events on a cell phone. Additionally, Horn, in a raised voice, chanted "U.S.A,

U.S.A" with rioters as he roamed the Capitol. ECF No. 1-1, Statement of Facts at 2. Based on tipster information, Federal Bureau of Investigation agents arrested Horn.

**ARGUMENT**

Essentially, Horn argues that he is entitled under *Brady v. Maryland*, 373 U.S. 83 (1963), to discover DOJ's internal policy determination whether to grant him member of the news media status.[1] Horn claims he was acting as a journalist on January 6, 2021 and like other journalists in the Capitol that day, the Department should not have charged him with violating federal law. He further asserts that because DOJ did not prosecute other journalists present inside the Capitol and Horn is charged with crimes related to his activities on January 6, Horn is entitled to discover how DOJ applied its news media policy and whether he was afforded member of the news media status and not prosecuted like other journalists. Horn claims that discovery of DOJ's internal memorandum and reports underlying the decision to prosecute him may "contain evidence suggesting that Mr. Horn is *not* a threat to national security or public safety and was not at the Capitol on January 6, 2021 to participate in an attempt to overturn the results of the 2020 President Election-as he has consistently maintained." ECF No. 49 at 3 (emphasis in original). Moreover, Horn argues "the requested material could include records pertaining to other members of the news media that have been investigated and/or charged with crimes pertaining to the January 6, 2021 events at the Capitol." *Id.*

In support of his claims Horn cites the DOJ's Annual Report: Calendar Year 2021 of the Department of Justice Use of Certain Law Enforcement Tools to Obtain Information from, or Records of, Members of the News Media; and Questioning, Arresting, or Charging Members of the News Media (Annual Report: Calendar Year 2021); a news article, Anarchy in the USA:

---

[1]Although asserted as *Brady* claims, no *Brady* violation has been established.

Revisit the Conversation with VII Photographers Who Covered the Events in the Capitol; and a VICE News article, "'So, So Angry': Reporters Who Survived the Capitol Riot Are Still Struggling.'" *Id.* at 4. The DOJ Annual Report: Calendar Year 2021 is an annual report the DOJ makes available to the public detailing tools law enforcement used to obtain information from, or records of, members of the news media in 2021. https://www.justice.gov/criminal-fraud/file/1534096/download (last accessed October 15, 2022). The report covers the DOJ's use of subpoenas and applications for court orders or search warrants (Paragraph A); questioning, arrests, or charges authorized by the Attorney General (Paragraph B); subpoenas, applications for court orders, search warrants, questioning, arrests, or charges authorized by a Deputy Assistant Attorney General for the Criminal Division (Paragraph C); subpoenas and applications for court orders authorized by Assistant Attorneys General or United States Attorneys (Paragraph D); and News Media Consultations (Paragraph E). *Id.* Relevant here, the annual report states:

> In connection with the investigation into the January 6, 2021 attack on the U.S. Capitol, the Attorney General authorized the voluntary questioning of multiple members of the news media who were witnesses to serious criminal conduct, including violent assaults on law enforcement officers, or victims of and/or witnesses to targeted attacks on members of the news media during the Capitol breach.

*Id., see also* ECF No. 49 at 4.

Anarchy in the USA: Revisit the Conversation with VII Photographers Who Covered the Events in the Capitol is an Internet article featuring an interview conducted on January 18, 2021 with four credentialed photographers present at the Capitol on January 6, 2021.[2] Relevant here, when the four photographers were asked if they were detained or questioned in the immediate

[2] VII Agency was founded in September 2001 by what it maintains are seven "leading photojournalists and documentarians" to enable the group to easily distribute their work in a digital photography era. https://viiphoto.com/vii-agency/ (last accessed October 15, 2022).

aftermath of the riot on January 6, they responded that they were not. https://viiphoto.com/resource/anarchy-in-the-usa-revisit-the-conversation-with-vii-photographers-who-covered-the-events-in-the-capitol/ (last accessed October 15, 2022).

So, So Angry: Reporters Who Survived the Capitol Riot Are Still Struggling is a Vice news article featuring established reporters who covered the Congress on January 6, 2021 and how the reporters continue to struggle with the events. https://www.vice.com/en/article/4avqqn/reporters-survived-capitol-riot-struggling (last accessed October 15, 2022). For example, one reporter, John Bresnahan, referred to as a "congressional reporting veteran" who worked in the Capitol for decades, was present in the House Gallery when he learned rioters had breached the Capitol building. *Id.* An unnamed reporter is described as a "longtime Capitol Hill reporter [who] opted for early retirement shortly after living through the riot." *Id.* A third reporter, Lisa Desjardins, a PBS NewsHour correspondent, stated she suffered from insomnia after the Capitol riots. *Id.*

Horn contends that the report and two Internet articles serve as evidentiary support for a motion to dismiss based on selective prosecution because "coupled with the government's admissions in this case" the material:

> [P]lainly reveal[s] that the DOJ followed its First Amendment policies in investigating the January 6, 2021 events at the Capitol. And since Mr. Horn was charged with crimes relating to these events while other members of the media have not been charged, it is logical to conclude that the government has records within its possession that document *how* the policies were followed in Mr. Horn's case and *why* the decision was made to charge him with crimes when other members of the media were not so charged.

ECF No. 49 at 4-5 (emphasis in original). Horn contends disclosure of DOJ's internal decision-making process in his case may reveal that his prosecution is based on an "other arbitrary classification" and thus violates "the equal protection component of the Due

Process Clause of the Fifth Amendment." *Id.* at 5. The report and articles Horn cites in support of his argument fail to entitle him to the discovery he seeks.

Numerous factors influence prosecutors' decisions to prosecute individuals. Those factors include the strength of the case, policies of general deterrence, the enforcement priorities of the government, and a correlation of a case's value to the government's overall enforcement goals. *United States v. Stone*, 394 F. Supp. 3d 1, 31 (D.D.C. 2019). A presumption of regularity applies to prosecutorial charging decisions and unless there is clear evidence of an "unjustifiable standard such as race, religion, or other arbitrary classification" courts will presume prosecutors "properly discharged their official duties" when deciding whether an accused committed a crime defined by a statute. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). "[T]his deference to the Executive's prosecutorial decision-making 'stems from a concern not to unnecessarily impair the performance of a core executive constitutional function.'" *Stone*, 394 F. Supp. at 31 (quoting *Armstrong*, 517 U.S. at 465).

To establish a claim of selective prosecution to overcome this presumption of regularity, a defendant must show that the prosecutorial policy under which the charging decision was made had a discriminatory effect and that it was also motivated by a discriminatory purpose. *Armstrong*, 517 U.S. at 464. This is a demanding standard. *Id.* at 463. A defendant must show, (1) that defendant was singled out for prosecution from among others similarly situated persons and, (2) the defendant's prosecution was based on an improper motive such as race, religion, or another arbitrary classification. *See Ministries v, Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000); *see also Stone*, 394 F. Supp. 3d at 30.

"The standard for obtaining discovery regarding selective prosecution is 'correspondingly rigorous' because '[i]f discovery is ordered, ... [i]t will divert prosecutors' resources and may disclose the Government's prosecutorial strategy.'" *Stone*, 394 F. Supp. 3d at 30 (quoting *Armstrong*, 517 U.S. at 468). Therefore, a defendant must produce evidence of the essential elements of selective prosecution. *Armstrong*, 517 U.S. at 470. This evidence must be credible and not the product of mere speculation or personal conclusions based on anecdotal evidence. *Stone*, 394 F. Supp. 3d at 31 (quotation marks omitted). If a defendant fails to satisfy either prong of the selective prosecution test, the defendant is not entitled to discovery. *United States v. Blackley*, 986 F. Supp. 616, 618 (D.D.C. 1997).

**Horn has failed to meet his "correspondingly rigorous" burden to establish entitlement to discovery on a selective prosecution claim.**

***A.*** *Horn fails to establish that he was singled out for prosecution because he cannot establish a similarly situated comparator.*

Horn fails to establish that any of the individuals described in the sources he cites—DOJ's Annual Report: Calendar Year 2021; the Anarchy in the USA: Revisit the Conversation with VII Photographers Who Covered the Events in the Capitol" news article; and the VICE News article, So, So Angry: Reporters Who Survived the Capitol Riot Are Still Struggling—are similarly situated comparators.

Defendants are similarly situated for purposes of selective prosecution claims when the circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them. *Stone,* 394 F. Supp. 3d at 31 (quotation marks omitted). Or stated differently by the Eleventh Circuit in *United*

*States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000), and cited in *Stone,* a similarly situated individual is one who has:

> engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant – so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan – and against whom the evidence was as strong or stronger than that against the defendant.

*Stone*, 394 F. Supp. at 31. Courts have narrowly interpreted the term "similarly situated" and insist that a defendant show "that the crimes charged and those allegedly committed by the comparator are the same or similar and arose in the similar circumstances." *Id.* at 30.

Horn has failed to establish the existence of a similarly situated comparator. The Department's Annual Report: Calendar Year 2021 makes no reference to journalists charged or uncharged for their activities at the Capitol on January 6, 2021. Nor does it offer any factual details of journalists' activities on that date. The annual report merely references the Department's use of investigative tools used by law enforcement in relation to the media in 2021, including authorization from the Attorney General to seek the voluntary interview of journalists who were present at the Capitol on January 6, 2021. Horn's reliance on the VII interviews likewise fails. The photographers were all credentialed members of the media who have worked for established media organizations such as TIME, the New York Times, and The New Republic. https://viiphoto.com/resource/anarchy-in-the-usa-revisit-the-conversation-with-vii-photographers-who-covered-the-events-in-the-capitol/ (last accessed October 15, 2022). Horn has not claimed he was a credentialed member of the media on January 6, 2021. More importantly, Horn has failed to establish whether the named photographers acted in a

similar manner as Horn did once inside the Capitol by chanting slogans in solidarity with the rioters, i.e., "U.S.A., U.S.A.," or whether the photographers stood on statues in the Capitol while taking photographs or video as Horn did. ECF No. 1-1, Statement of Facts at 2-3. Nor does the Vice news article support Horn's argument that discovery is warranted because the journalists referenced in the article were veteran Capitol Hill journalists. For example, a reporter was a "congressional reporting veteran," and another a "longtime Capitol Hill reporter." https://www.vice.com/en/article/4avqqn/reporters-survived-capitol-riot-struggling (last accessed October 16, 2022). Moreover, the article establishes that these veteran Capitol Hill journalists, unlike Horn, were inside the Capitol covering the congressional proceedings prior to the Capitol breach, which coupled with their veteran Capitol Hill status implies they were authorized to be inside the Capitol on January 6, 2021. *Id.* Having failed to meet the "rigorous" standard necessary to satisfy the first prong to establish a selective prosecution claim, *see Armstrong*, 517 U.S. at 468, the Court should deny Horn's Motion to Compel on this basis alone.

Horn likewise fails to cite any case law that supports his broad assertion that he qualifies as a member of the news media and that his prosecution represents an arbitrary exercise of prosecutorial discretion. Moreover, even were Horn a member of the news media, that status alone does not confer immunity from prosecution. *See Branzburg v. Hayes*, 408 U.S. 665, 691 (1972); *see also* 28 C.F.R. § 50.10(j)(noting explicitly that DOJ's news media policy "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.").

***B.*** *Horn has failed to produce evidence his prosecution is based on an improper motive, i.e., an arbitrary classification.*

Even if Horn could establish a similarly situated comparator, Horn's motion still fails because he has not produced any evidence the government acted with a discriminatory purpose. *Armstrong,* 517 U.S. at 457 (requiring a defendant to show his prosecution was motivated by a discriminatory purpose). A defendant seeking to establish an entitlement to discovery to make a selective prosecution claim must "come forward with some evidence showing that his prosecution was based upon an unlawful or arbitrary classification." *Stone*, 394 F. Supp. at 35. Horn has produced no evidence or even alleged a motive for the government's alleged discriminatory prosecution. Therefore, the Court should deny his motion.

***C.*** *Horn has failed to cite to a case entitling him to the relief he seeks.*

Lastly, when the Court allowed Horn to file a supplemental memorandum in support of his Motion to Compel, the Court specifically noted that it did so to allow Horn an opportunity to cite case law that would support his position. As noted above, Horn has not done so. Instead, Horn asserted earlier argued *Brady* claims and engaged in mere speculation as to what discovery could theoretically yield. ECF No. 49 at 3 (speculating that the material may show that Horn was not a threat to national security or public safety or could reveal "records pertaining to other members of the news media that have been investigated and/or charged with crimes pertaining to the January 6, 2021 events at the Capitol."). None of Horn's speculative assertions would entitle him to disclosure of the government's internal records because the assertions could not support a selective prosecution claim.

As such, Horn's attempt to distinguish between a prosecutor's assessment on the appropriate charges to charge a defendant in a typical criminal case and the decision to charge him in the instant case, *see* ECF No. 49 at 6-7, fails because he cannot establish similarly situated comparators or that the government acted arbitrarily when it charged him.

## CONCLUSION

WHEREFORE, for the above-stated reasons, Horn's supplemental memorandum fails to support the arguments in Horn's Motion to Compel and therefore the Court should deny Horn's Motion to Compel.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Michael G. James*
MICHAEL G. JAMES
Assistant United States Attorney
N.Y. Reg. No. 2481414
Office of the United States Attorney
Eastern District of North Carolina
(on detail to the USAO-DC)
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Mike.James@usdoj.gov
Telephone: (919) 856-4530