UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-301 (TJK) |
| | : | |
| STEPHEN HORN, | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE WITNESS NARRATION OF VIDEO EVIDENCE

Defendant Stephen Horn seeks to prohibit the government's witnesses from narrating any videos or "attempting to explain, describe, or commentate, in the form of opinion or otherwise, the events captured" in the defendant's video recording. ECF No. 60 at 1. He argues that no witness can provide such testimony without having first established "first-hand, personal knowledge of the events or matters at issue." *Id.* at 1-2.

As explained below, such narration is both helpful and relevant, and courts have overwhelmingly sanctioned the practice. As such, the defendant's motion should be denied.

## ARGUMENT

### I.   Narrating Video Is Common And Permitted

It should be no surprise that the government may call as witnesses certain law enforcement officers who were present at the Capitol on January 6, 2021, as well as any Federal Bureau of Investigation agents who investigated the defendant. It should also be no surprise—as it has been done in virtually every Capitol riot case—that the government may play videos of the events of that day. At trial, the government may ask witnesses to describe the action in these videos for several reasons. Witnesses can confirm a given video's authenticity, explain where and when the events recorded occur, and identify other rioters or officers, as well as guideposts and objects. As

1

law enforcement personnel, witnesses can explain what officers or rioters in a given video are doing. And as investigators in this case, agents can explain who the defendant is, where he is in a given video, and what he appears to be doing. The witnesses can also provide helpful context such as location of the video or other events that were occurring in such video. All of this would be helpful to the trier-of-fact as it provides necessary context. The alternative would be, for example, to show a video portraying dozens, or even hundreds, of people with no context whatsoever. The trier-of-fact would be expected to pick the defendant out of the crowd or to understand somehow that the defendant is the recorder of the video, and to identify a relevant sequence of facts occurring, at a particular timeframe without guidance. That is absurd. Narration of a video, within reason and within the relevant confines of the case, would undoubtedly be helpful to the trier-of-fact.

Some of the testimony we expect to elicit may come from officers' direct experience, in which case their statements are squarely permitted under Federal Rule of Evidence 602. *Id.* ("A witness may testify to a matter [if] . . . the witness has personal knowledge of the matter."). But even when officers didn't directly witness the actions in a certain video, their testimony may still be permissible under Rule 701. That rule allows lay witnesses' opinion testimony when such testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge . . . ." Fed. R. Evid. 701.

Under this rule, courts have routinely permitted witnesses to narrate video evidence, including in numerous January 6 cases. *E.g.*, Order, *United States v. McCaughey, III, et al.*, 1:21-CR-40 (TNM) (D.D.C. July 20, 2022), ECF No. 389 at 1-2 (in January 6 case, denying motion in limine to preclude officers' narration of video evidence); *see also United States v. Garcia-Zarante*,

419 F. Supp. 3d 1176, 1179 (N.D. Cal. 2020) (noting that "[w]itnesses may narrate and describe events in a video based on their perceptions"); *Humphries v. Brewer*, No. 2:18-CV-11406, 2019 WL 3943074 (E.D. Mich. Aug. 21, 2019) (denying ineffective assistance habeas claims where law enforcement and civilian witnesses narrated apartment surveillance video, had personal knowledge of the physical location in which the video was taken, and the testimony was helpful to the jury); *Allen v. Klee*, No. 14-CV-13409, 2016 WL 5791189 (E.D. Mich. Oct. 4, 2016) (denying ineffective assistance habeas claims where non-expert officer narrated video and his opinions were helpful to the jury where he "had the benefit of reviewing the video numerous times, giving him the opportunity to comprehend the events that were transpiring on the video and to determine the identity of the participants").

Appellate courts have considered this issue in detail and have generally allowed video narration like the kind at issue here. For example, in *United States v. Torralba-Mendia*, 784 F.3d 666, 666 (9th Cir. 2015), the Court of Appeals for the Ninth Circuit affirmed a law enforcement officer's video narration in a smuggling conspiracy case. Finding that the officer gave proper lay opinion testimony, the Court explained:

> The narratives helped the jury understand what they were seeing. For example, [the officer] provided the length of time lapses between video clips. He pointed out unique characteristics of the vehicles—like their makes, models, and whether any bodywork had been done to them—that helped the jury identify the same cars in subsequent videos. He linked the different cars to specific conspirators. He counted the number of passengers exiting or entering the vehicles (a difficult task because the video's angle obscured the view). And he pointed out the particular clothing of certain passengers, to show that a person dropped off in one video was the same person picked up in a later video.

*Id.* at 659-60. Ultimately, the court found the officer's "narratives were based on his repeated viewing of the recordings, and helped the jury understand the import of the videos." *Id.* at 660. The court permitted the testimony.

In *United States v. Begay*, 42 F.3d 486, 502 (9th Cir. 1994), the Ninth Circuit similarly permitted an officer's lay testimony as he narrated a video. The appellants were part of a riot involving hundreds of people to take over the Navajo Nation Administration and Finance Building, and the officer narrated a video of that riot. *Id.* at 489, 502. The court held that the officer's narration was proper, and "need not be based on the 'live' events . . . because he was not testifying to his eyewitness account of those events." *Id.* at 502. Rather, the officer "need only have perceived the events depicted in" the videotape. Such testimony was permissible, as well as helpful:

> Although the jury viewed [the video] in its entirety, it is reasonable to assume that one viewing a videotape of a demonstration involving over 200 people would likely not see certain details, given the tremendous array of events all occurring simultaneously. [The officer] spent over 100 hours viewing [the video]. To have the jury do likewise would be an extremely inefficient use of the jury's and the court's time. Therefore, [the officer's] testimony concerning which persons were engaged in what conduct at any given moment could help the jury discern correctly and efficiently the events depicted in the videotape.

*Id.* at 503. As in *Torralba-Mendia*, the circuit court in *Begay* affirmed the officer's narration.

Other circuit courts have made similar holdings. For example, in *United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011), the defendant challenged the admissibility of an FBI agent's testimony connecting a defendant to a flag burning demonstration seen on videotape. 664 F.3d at 513. The Fifth Circuit concluded that such testimony was permissible because "the agents' opinions were limited to their personal perceptions from their investigation of this case," and the testimony constituted "relevant factual information about the investigation." *Id.* (citing *United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010); *see also United States v. Rollins*, 544 F.3d 820, 830-32 (7th Cir. 2008) (finding no error in permitting a law enforcement's "impression" testimony about recorded phone calls, as well as his personal, extensive experience with a particular investigation).

Additionally, in other January 6 trials, courts in this district have generally permitted video narration in a January 6 trial over the defense's challenge. For example, Judge McFadden faced a largely similar motion in limine, which he denied, "for substantially the same reasons identified by the Ninth Circuit in *United States v. Torralba-Mendia* and *United States v. Begay*." Order, *McCaughey*, 1:21-CR-40 (TNM) (DDC July 20, 2022), ECF No. 389 at 1-2 (citations omitted). The court nevertheless permitted specific objections raised during trial. The basic logic of that decision applies equally here.

Finally, to the extent that the defendant's motion can be construed as seeking to preclude government witnesses from testifying who were not "at the scene of the crime," or suggest that a law enforcement witness has no better ability to understand items of evidence than a finder-of-fact, ECF No. 60 at 2-3, that argument should also be rejected. Courts routinely permit witnesses—specifically, law enforcement—to testify as lay witnesses based on facts learned during their investigation. *United States v. Agramonte-Quezada*, 30 F.4th 1, 20-21 (4th Cir. 2022) (explaining that law enforcement can testify as a lay witness based on "the lay expertise a witness personally acquires through experience, often on the job") (citing *United States v. Amador-Huggins*, 799 F.3d 124, 130 (1st Cir. 2015) (finding no abuse of discretion in a district court's ruling that a law-enforcement witness presented only lay testimony in accordance with Rule 701 when the knowledge underpinning his testimony was rationally based on the witness's perception, acquired in the course of his work as an FBI agent); *United States v. Habibi*, 783 F.3d 1, 5 (1st Cir. 2015) (concluding it was not an abuse of discretion to permit an agent to offer lay testimony when the testimony was based on the agent's experience as a federal law enforcement officer"); *United States v. Jackson*, 549 F.3d 963, 975 (5th Cir. 2008) (holding a witness may testify "as a lay witness drawing from his past experienced formed from firsthand observation as an investigative agent").

Additionally, to the extent that the defense is concerned about misleading or inaccurate testimony, the remedy is not exclusion of the testimony altogether, but cross examination, which the defense will be entitled to here.

## II. CONCLUSION

The practices that the defendant seeks to prohibit are common and permitted and will aid the finder-of-fact in authenticating and interpreting video and documentary evidence. If the defendant has particular objections pertaining to a witness's testimony on a particular exhibit, the defendant can assert such an objection at trial. But to exclude such testimony wholesale would run afoul of a well-established body of case law, needlessly complicate the presentation of evidence, and hinder the work of the court. As such, the defendant's motion should be denied.

Respectfully submitted,

DATED: July 20, 2023

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Ashley Akers
ASHLEY AKERS
MO Bar No. 69601
Trial Attorney
1100 L Street NW
Washington, DC 20005
(202) 353-0521
Ashley.Akers@usdoj.gov

SONIA W. MURPHY
Bar No. 483072
Trial Attorney
601 D Street, NW
Washington, DC 20001
(202) 803-1612
Sonia.Murphy@usdoj.gov