UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 21-CR-301 (TJK) |
| | : | |
| **STEPHEN HORN,** | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION TO DEFENDANT'S
### MOTION TO DISMISS FOR SELECTIVE PROSECUTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this opposition to the defendant's Motion to Dismiss for Selective Prosecution.

### FACTUAL BACKGROUND

The defendant, Stephen Horn, is charged with the violation of Title 18, United States Code, Section 1752(a)(1)) (Entering and Remaining in a Restricted Building or Grounds) (Count One); Title 18, United States Code, Section 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds) (Count Two); Title 40, United States Code, Section 5104(e)(2)(D) (Disorderly and Disruptive Conduct in the Capitol Building) (Count Three); and Title 40, United States Code, Section 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building) (Count Four).

These charges stem from Horn's conduct at the U.S. Capitol on January 6, 2021. On that date, a joint session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election. Vice President Pence, who was under United States Secret Service ("USSS") protection, was present at

1

the United States Capitol building that day presiding over the certification process. The U.S. Capitol Police ("USCP"), with authority over security on the Capitol grounds, set up security barriers on the Capitol grounds, including bike racks, snow fencing, and signs that read, "Area Closed By Order of the United States Capitol Police Board." The exterior plaza of the U.S. Capitol was entirely closed to members of the public.

While the certification process was ongoing, a large crowd gathered outside the United States Capitol, entered the restricted grounds, and forced entry into the Capitol building. As a result, the joint session and the entire official proceeding of the Congress was halted until law enforcement was able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials.

The defendant was part of the large mob that descended on the Capitol and the restricted grounds that day. He wore a black helmet, black gloves, black jacket, and carried a black backpack. The defendant walked over fencing on the Capitol grounds that warned individuals not to go any further. He proceeded closer to the Capitol anyway, eventually climbing up a fence being used as a makeshift ladder onto the outside of the Capitol building.

The defendant entered the Capitol building at approximately 2:14 p.m. and exited after about a minute, having heard loud bangs he feared may be gunshots. He then re-entered the Capitol building at approximately 2:16 p.m. He traveled to the Crypt, where he witnessed law enforcement officers being sprayed with a fire extinguisher. He then made his way up a flight of stairs and to the Rotunda, where he stood on the base of a monument, recording on his cell phone.



*Defendant (red circle) standing on a statue in the U.S. Capitol*

While in the Capitol building, the defendant also walked through Statuary Hall and eventually entered Speaker Nancy Pelosi's office. On video recorded by the defendant himself, he is heard exclaiming "Wait, is this Pelosi's office?! There's a medal to her." He later says, "Should've looked at the floor plans before we came." A voice consistent with the defendant's voice can also be heard chanting "USA!" while defendant is in the Capitol building. Defendant ultimately left the Capitol building at approximately 3:11 p.m.

After January 6, 2021, the defendant posted about his participation in the Capitol riot on social media. He said, for example, "I was on the front lines of the assault on the Capitol." He also admitted "witness[ing] a fire extinguisher being thrown at the police in the rotunda basement."

3

The defendant stated that he was "not there when they broke through most of the barriers around the outside of the capitol" but that he "followed the crowd in." He also stated that he "happened" upon Nancy Pelosi's office when inside the building. In response to one comment where a person calls him brave, the defendant responded, "I think defying unconstitutional police orders is pretty brave."

On and around January 6, 2021, the defendant did not have a public facing media presence. His Twitter page had <u>one</u> follower. He had a personal Facebook page that, around the time of the Capitol riot, had about <u>20</u> "friends." His Facebook activity included sharing posts and commenting on other users' posts – not reporting breaking news or bringing to light new information. From November 2020 until shortly after the Capitol riot, the defendant had not "reported" any news on Facebook. The defendant is not – and was not – employed as a journalist. He did not possess any press credentials on January 6, 2021, and recorded video using his cellphone (like thousands of other rioters) as well as a camera placed inside of a skateboard helmet. There is no indication that, prior to January 6, 2021, the defendant was associated with any local or national news outlets. Within about a month of January 6, 2021, the defendant's Youtube broadcast channel had less than 100 followers. The defendant did not publish, broadcast, or disseminate news. At best, he shared news information gathered by others and discussed that news information via the Facebook comment section – like hundreds of thousands of other users.

## Argument

In a motion riddled with speculation and insinuations, the defendant alleges that the government selectively targeted him for prosecution based on an arbitrary standard of which "independent multi-media journalists" would be prosecuted. ECF No. 59 ("Def. Mot.") at 1. In asserting a claim for selective prosecution, the defendant contends that the government failed to

4

prosecute similar conduct of two other people who entered the Capitol building and recorded the events of the day for journalistic purposes, and further alleges that the government violated his due process rights by failing to sufficiently explain why he is being prosecuted.

The defendant fails to meet both elements of a selective prosecution claim. He has not identified "similarly situated" individuals, and, in fact, is far more similarly situated to the hundreds of individuals who *have* been charged for their actions on January 6, nor has he demonstrated a discriminatory purpose. Thus, Horn's motion fails the threshold evidentiary showing for a selective-prosecution claim. Therefore, his request for discovery should be denied.

**I.      Legal Standards**

To prevail on his motion, the defendant must meet the "demanding" standard to show that his prosecution violates the Equal Protection Clause. *United States v. Judd*, 579 F. Supp. 3d 1, 4 (D.D.C. 2021) (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996)). "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charges shall be made, or whether to dismiss a proceeding once brought." *United States v. Fokker Servs. B.V.,*, 818 F.3d 733, 741 (D.C. Cir. 2016) (cleaned up). So the "presumption of regularity applies to prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume prosecutors have properly discharged their official duties." *Id.*; *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."). As a result, "[i]n the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to

prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Armstrong*, 517 U.S. at 464.

To overcome the presumption of regularity and obtain dismissal of the criminal charges, the defendant must meet two elements. First, the defendant must show that the prosecutorial policy "had a discriminatory effect." *Id.* at 465. To show that, the defendant must show that the government afforded "different treatment" to persons "similarly situated" to him. *Id.* Second, the defendant must show that the prosecutor had "a discriminatory purpose," *Armstrong*, 517 U.S. at 465, meaning that the government prosecuted the defendant "because of" his membership in an identifiable group, *Wayte v. United States*, 470 U.S. 598, 610 (1985).

A selective prosecution claim may require discovery into the government's files, an effort that will "divert prosecutors' resources" and possibly disclose their strategy. *Armstrong*, 517 U.S. at 468. To minimize that burden, a defendant must present "at least a colorable claim" of selective prosecution before any discovery is permitted. *Att'y Gen. v. Irish People, Inc.*, 684 F.2d 928, 932 (D.C. Cir. 1982). A colorable claim is one that presents "some evidence tending to show the existence of the essential elements" of selective prosecution. *Armstrong*, 517 U.S. at 468. This "colorable claim" standard is a "significant" and "rigorous" one that is not easily surmounted. *Id.* at 464, 468.

Finally, courts in this district have repeatedly rejected similar selective prosecution allegations advanced by defendants charged with criminal offenses stemming from their conduct on January 6th. *See, e.g.*, *United States v. McHugh*, No. CR 21-453, 2023 WL 2384444, at *13 (D.D.C. Mar. 6, 2023) (Bates, J.); *United States v. Padilla*, No. CR 21-214, 2023 WL 1964214, at *4-6 (D.D.C. Feb. 13, 2023) (Bates, J.); *United States v. Brock*, No. 21-cr-140, 2022 WL 3910549, at *11-12 (D.D.C. Aug. 31, 2022) (Bates, J.); *United States v. Rhodes*, No. 1:22-cr-15, 2022 WL

3042200, at *4-5 (D.D.C. Aug. 2, 2022) (Mehta, J.); *United States v. Judd*, 579 F. Supp. 3d 1, 5-9 (D.D.C. 2021) (McFadden, J.); *United States v. Miller*, No. 1:21-cr-119, Doc. No. 67 (D.D.C. Dec. 21, 2021) (Nichols, J.); *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. July 2, 2021) (McFadden, J.). In fact, no selective prosecution claim by January 6 defendants has been sustained to date.

## II.   The Defendant Has Failed To Proffer Any Evidence Supporting An Inference Of Selective Prosecution

The defendant has failed to make the threshold showing on either selective-prosecution element. He has not presented sufficient evidence suggesting "that (1) [he] was singled out for prosecution from among others similarly situated" nor has he presented sufficient evidence (2) "that [his] prosecution was improperly motivated." *Branch Ministries v. Rossotti*, 211 F.3d 137, 144 (D.C. Cir. 2000) (quoting *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983)).

### A.   The Defendant Has Not Made A Colorable Showing That The Government Singled Him Out For Prosecution

With respect to the first prong, the defendant must first set forth evidence that the prosecution "had a discriminatory effect," *Armstrong*, 517 U.S. at 465, by showing that "others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted," *Irish People*, 684 F.2d at 946 (citation omitted). An individual may be similarly situated to the defendant if:

> [He] committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*Stone*, 394 F. Supp. 3d at 31 (Berman Jackson, J.) (quoting *United States v. Smith*, 231 F.3d 800,

810 (11th Cir. 2000)); *see also United States v. Lewis*, 517 F.3d 20, 27-28 (1st Cir. 2008).[1] "Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Branch Ministries*, 211 F.3d at 145 (citing *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997)). The phrase "similarly situated" is "narrowly" interpreted. *Judd*, 579 F. Supp. 3d at *4 (quoting *Stone*, 394 F. Supp. 3d at 31).

Here, the defendant's conduct on January 6 places him in a category of hundreds upon hundreds of similarly situated individuals who *are being prosecuted* for their actions on January 6. As noted above, the defendant climbed a fence being used as a makeshift ladder to make his way to the Capitol building. The defendant entered, left, and *re-entered* the Capitol building. Once inside the Capitol for the second time, the defendant made his way through the building, climbed on a statue, joined rioters chanting "USA!," and ultimately made his way into a sensitive area of the Capitol – Speaker Pelosi's office. Then, after the fact, far from reporting events as an objective journalist might, the defendant bragged that he was brave because he "def[ied] unconstitutional police orders," and bragged that he "was on the front lines of the assault on the Capitol." Those actions alone demonstrate that the defendant is not "similarly situated" to individuals who have not been prosecuted. *See also United States v. Rivera*, No. 21-cr-060 2022 WL 2187851, (D.D.C. Jun. 17, 2022) (defendant who claimed to be a videographer convicted at trial for conduct on

---

[1] "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced. . . . A multiplicity of factors legitimately may influence the government's decision to prosecute one individual but not another. These may include, *inter alia*, the comparability of the crimes, the similarities in the manner in which the crimes were committed, the relative efficacy of each prosecution as a deterrent, and the equivalency of the evidence against each prospective defendant." (internal citations omitted).

January 6). To the contrary, the defendant's actions demonstrate that he *is* similarly situated to the hundreds of individuals who entered and remained in the Capitol building and engaged in disorderly conduct, and who were charged for such conduct. That many – if not most – of those individuals also video recorded or took pictures of their criminal activity and posted that content on their personal social media accounts or otherwise distributed that content further demonstrates the similarities of those charged individuals with the defendant.

Thus, the defendant's motion should be denied. There cannot be a "discriminatory effect" when the defendant is similarly situated to hundreds of others who face the same charges for comparable conduct. The only distinction between the defendant and hundreds upon hundreds of other defendants charged with the same four misdemeanors, who video recorded or took photographs of their conduct, and who posted that content on their personal social media accounts or otherwise distributed it, is the defendant's self-serving proclamation that he's a journalist. The defendant, however, cannot plausibly argue that he qualifies as member of the news media such that he falls in a separate group of individuals who may not face charges at this time.[2] Filming himself on a rampage and posting that footage to a Facebook account with "about twenty" friends does not erect a journalist's privilege behind which the defendant tries to shield himself.[3]

---

[2] As explained in this response, the fact that the government has not yet brought criminal charges against a particular person does not lead to the conclusion that the person is immune from such charges. As the Court knows, the government's investigation is ongoing, and new charges are brought against known individuals frequently.

[3] Even if the Defendant could plausibly claim he was engaged in news-gathering, being a member of the news media does not immunize one from criminal prosecution. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 691 (1972) (explaining that the First Amendment does not, "in the interest of securing news or otherwise, confer[] a license on either the reporter or his news sources to violate criminal laws).

Despite that the defendant is similarly situated to hundreds of other individuals who *have* been charged for their conduct during the Capitol riot, the defendant submits and relies on affidavits from two individuals alleged to have been at the Capitol on January 6, 2021 – Jeremy Lee and Stephen Baker. *See* Def. Mot. at 11-14; ECF Nos. 58-6, 58-7.  The defendant argues that he, like Mr. Lee and Mr. Baker, is an independent journalist, and because neither Mr. Lee or Mr. Baker have been charged for their conduct on January 6, the charges brought against him amount to discriminatory prosecution. This argument fails for several reasons.

First, unlike the individuals identified in his motion who are allegedly associated with newsgathering entities and have experience and capabilities in sharing news on their personal platforms,[4] the defendant proffers no information to suggest that he has ever held a press credential or been otherwise affiliated with a news organization. The defendant has not claimed that he has experience or capacity in sharing his content, and, in fact, he had essentially no following on his social media pages; by his own admission, he had about 21 followers *in total* between his Twitter and Facebook accounts. Further, one of the alleged comparators, Mr. Lee, has had far more extensive experience as a journalist than the defendant and he provided a long list of events that he has allegedly covered as an independent journalist. ECF No. 58-6 at 2. The other alleged comparator, Mr. Baker, has described his coverage and reporting on events through various platforms and using his name and his website name, "The Pragmatic Constitutionalist." The defendant has no such comparable circumstances.

---

[4] The government does not concede that the two proposed comparators are, in fact, legitimate members of the news media that should not or cannot be prosecuted for their conduct on January 6. Rather, the government explains that, whether those proposed comparators are legitimate news media members or not, they are not similarly situated to the defendant.

Additionally, Mr. Lee explained the "journalistic protocol" that he took on January 6, including not stopping "at least one of [his] cameras" during his entry to the Capitol, ECF No. 58-6 at 3, and he described in his affidavit that he has various social media accounts where he posted his content from January 6. As explained, the defendant, on the other hand, had essentially no social media following, and he did not exercise or discuss any "journalistic protocol" that he took on January 6. Quite the opposite, the defendant was climbing on statues inside the Capitol with scores of rioters disrespecting and causing great destruction to the building. Moreover, Mr. Baker carried with him journalist equipment, such as a camera tripod, spare batteries, a microphone, and other electronic accessories. ECF No. 58-7 at 3. Mr. Baker claims to "not [have] participate[d] in any chanting or songs." *Id.* The defendant, on the other hand, did not carry back up journalistic equipment on January 6 and he *did* participate in the chanting.

In brief, the individuals mentioned in the defendant's motion are improper "comparator[s]" because they are not similarly situated. *Stone*, 394 F. Supp. 3d at 31. It follows that the situational and evidentiary differences between the defendant and the other individuals in his motion represent "distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions." *Branch Ministries*, 211 F.3d at 145 (quoting *United States v. Hastings*, 126 F.3d 310, 315 (4th Cir. 1997).

Second, as explained above, the defendant is similarly situated with hundreds of individuals who *have* been charged. That the defendant can identify two individuals who – even assuming he were correct – are similarly situated to him but have not yet been charged does not demonstrate disparate treatment. In fact, quite the opposite. That the government has charged those hundreds of other similarly situated individuals dispels the defendant's argument of disparate treatment.

Moreover, the government's investigation is ongoing and the government has not yet charged everyone involved in the Capitol riot. As the Court knows, there is an unprecedented level of investigatory resources required to identify, investigate, and charge each individual who participated in the attack on the Capitol. As Judge McFadden has observed, which continues to hold true, "the Government continues to charge new individuals with offenses related to January 6." *United States v. Griffin*, 549 F. Supp. 3d 49, 58 (D.D.C. 2021). For that reason too, the defendant's effort to claim disparate treatment in comparison to an ever-extending sample size is unsupportable.

Accordingly, on the first element, the defendant has failed to point to "some evidence tending to show the existence of the essential element[]" of a discriminatory effect, because he fails to identify sufficiently similar comparator individuals. *Armstrong*, 517 U.S. at 468. The defendant here is similarly situated to hundreds of other defendants who *have* been charged.

### B. The Defendant Has Not Made A Colorable Showing That The Government Harbored An Improper Motive In Prosecuting Him

Even if the defendant could identify similarly situated individuals, he must also adduce clear evidence of a discriminatory purpose in the government's prosecution. This second prong requires proof "that his prosecution was based upon an unlawful or arbitrary classification." *Stone*, 394 F. Supp. 3d at 35 (citing *Branch Ministries*, 211 F.3d at 144). To meet his burden, the "defendant must provide something more than mere speculation or 'personal conclusions' of selective prosecution." *Stone*, 394 F. Supp. 3d at 31 (quoting *Armstrong*, 517 U.S. at 470). "[I]t is not enough to simply state that the prosecutor was biased. The defendant must *show* that in his case, the decisionmaker acted with a discriminatory purpose." *Stone*, 394 F. Supp. 3d at 36 (citing *United States v. Mack,* 53 F. Supp. 3d 179, 188 (D.D.C. 2014)). The defendant has failed to do so here.

First, as explained above, the defendant has failed to take into account the hundreds of individuals who, just like him, were charged with the same four misdemeanors based on their conduct. Many of these individuals, like the defendant, video recorded, took photographs, or otherwise documented their criminal activity and posted that documentation on social media. The defendant has not offered any evidence that the government's alleged animosity towards him and these hundreds of others is the reason that such individuals were charged. To the contrary, the government has charged individuals with the same four misdemeanors that the defendant was charged with when those individuals entered or remained in the Capitol building or grounds and were disorderly or disruptive in the Capitol building.

Second, the defendant relies purely on insinuation and inference to support this claim. The defendant argues that because the prosecution has not provided sufficient insight into matters of prosecutorial discretion, that fact alone amounts to an "improper motivation." That argument is ridiculous. As an initial matter, [s]peculation is not enough" to find that the government has acted on an improper motive. *United States v. Miller*, No. 21-cr-119 (CJN) at 3. The defendant concedes that his argument is premised on nothing more. Further, if the defendant's argument were to prevail here, then any prosecution could be said to have been based on "improper motivation" because a defendant may never be entitled to the full realm of discretionary determinations that culminate in charges being filed. The defendant's contention that the government's failure to explain in detail an inherently discretionary function does not run afoul of the constitution, and the defendant has cited nothing in support. And the defendant's contention that the government *must* have an improper motivation simply because it has not fully explained the basis of the discretionary determination to the defendant flies in the face of the presumption of regularity. Additionally, the defendant need only look as far as his own video content to supply the probable cause to believe

13

that the defendant committed the offenses charged here. Given that probable cause, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Armstrong*, 517 U.S. at 464.

The government's decision to bring charges against the defendant here reflects an appropriate exercise of the government's prosecutorial discretion in balancing the seriousness of the defendant's conduct, the strength of the evidence against him, the need for his rehabilitation, the need to deter him and others from future criminal activity targeting the electoral process, the allocation of the government's resources. All of these factors constitute permission prosecutorial considerations. *See Price*, 865 F.3d at 681.

Finally, the defendant relies on *Sherrill v. King*, 569 F.2d 124 (D.C. Cir. 1977), arguing that journalists have First Amendments rights to gather news, those rights cannot be deprived without due process of law, and if the government permits some journalists to gather news in "facilities [that] hav[e] been made publicly available," it cannot deny the right of other journalists. Def. Mot. at 18. This argument is without merit and does not afford the defendant any protections against prosecution. As an initial matter, the defendant had no right to enter any restricted area of the Capitol on January 6. In fact, the Capitol building and the Capitol grounds were restricted on January 6 – a fact that the defendant was fully aware of, as seen on his video footage. *See Branzburg v. Hayes*, 408 U.S. 665, 684 (1972) ("[T]he First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally."). And the defendant's self-designated title of journalist does not immunize him from criminal prosecution now. *See id*. at 683. Unlike in *Sherrill*, where the White House was open to some journalists with appropriate credentialing, the Capitol was never opened to rioters, nor was it open to (alleged) non-credentialed journalists to record the riot on January 6, 2021. The defendant has

no First Amendment protected liberty interest in gathering news in a building he illegally entered, and the defendant's self-serving assertion that he is a journalist does not immunize him from criminal prosecution. *See id*. at 683 ("[T]he publisher of a newspaper has no special immunity from the application of general laws.") (quoting *Associated Press v. NLRB*, 301 U.S. 103, 132 (1937)). Indeed, the First Amendment affords no defense for social media enthusiasts who film theirs or others' attempts to stop an election proceeding.

### III. A Defendant Must Make A "Rigorous" Showing On Each Element Of Selective Prosecution Before He Can Obtain Discovery On The Issue

As explained above, a selective prosecution claim may require discovery into the government's files, an effort that will "divert prosecutors' resources" and possibly disclose their strategy. *Armstrong*, 517 U.S. at 468. To minimize that burden, a defendant must present "at least a colorable claim" of selective prosecution, which requires "some evidence tending to show the existence of the essential elements" of selective prosecution. *Armstrong*, 517 U.S. at 468. This "colorable claim" standard is a "significant" and "rigorous" one that is not easily surmounted. *Id.* at 464, 468. A defendant must make a "colorable claim" as to both elements of selective prosecution, not just one. *Irish People*, 684 F.2d at 932, 947. And that claim requires "some evidence." *Armstrong*, 517 U.S. at 468. "A defendant cannot, for example, rely merely on government selectivity in prosecuting individuals for similar conduct – that would amount to a showing of prosecutorial discretion." *Judd*, 579 F. Supp. 3d at 5 (citing *United States v. Diggs*, 613 F.2d 988, 1003 (D.C. Cir. 1979)). For neither prong can the defendant rely on "personal conclusions based on anecdotal evidence." *Id.*

As explained above, the defendant has fallen far short of meeting the rigorous standard to show evidence of the elements of a selective prosecution claim. He has not identified similarly situated individuals – and in fact ignores that he is similarly situated to hundreds of individuals

who face or faced comparable charges – and he has raised nothing more than speculation as to the government's alleged improper motive. Thus, he has fallen far short here and thus his motion to compel discovery should be denied

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: July 29, 2023 | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
| By: | /s/ Ashley Akers<br>ASHLEY AKERS<br>MO Bar No. 69601<br>Trial Attorney<br>1100 L Street NW<br>Washington, DC 20005<br>(202) 353-0521<br>Ashley.Akers@usdoj.gov |
|  | SONIA W. MURPHY<br>Bar No. 483072<br>Trial Attorney<br>601 D Street, NW<br>Washington, DC 20001<br>(202) 803-1612<br>Sonia.Murphy@usdoj.gov |