**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | **Case No. 1:21-cr-301 (TJK)** |
| : | |
| **STEPHEN ETHAN HORN,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR ACQUITTAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response in opposition to the defendant, Stephan Ethan Horn's Motion for Acquittal. ECF No. 89.

**I.    Background**

The trial in this matter commenced on August 13, 2023, and concluded on August 18, 2023. *See* Minute Entries (8/13/2023, 8/14/2023, 8/15/2023, and 8/18/2023). On August 18, 2023, at the close of the government's case, the defendant renewed its Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29. *See* Minute Entry (8/18/2023). The Court elected to reserve ruling on the motion until after the verdict was issued. *See* Fed. R. Crim. P. 29(b); Minute Entry (8/18/2023). Later that same day, the jury rendered its verdict, finding the defendant guilty of Counts One, Two, Three, and Four.

Following the jury's verdict, the Court ordered the parties to submit a proposed briefing schedule on defendant's Rule 29 motion. Minute Entry (9/20/2023). The parties proposed, and the Court ordered, a briefing schedule. Minute Entry (9/25/2023).

The defendant filed his Motion for Acquittal on October 27, 2023. ECF No. 89. In his motion, the defendant asserts that, even though a jury unanimously convicted Stephen Horn on

all four counts, the Court should take the extraordinary remedy of overturning that verdict. In support, the defendant raises several arguments, many of which are untethered to the evidence introduced at trial, and none of which apply the correct legal standard to the fact of this case. As explained in this response, the Court should deny the defendant's motion.

## II. Legal Standard: Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29 permits the defendant to move for judgment of acquittal at the close of the government's case in chief or at the close of all evidence on the ground that the evidence presented is "insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

The standard for granting a motion for acquittal was well stated in *United States v. Cerilli*, in which the Court said:

> A trial judge can grant a motion for judgment of acquittal only when the evidence as a whole is insufficient to support a conviction as a matter of law . . . . However, where there is evidence upon which a jury may reasonably base and find guilt beyond a reasonable doubt, the trial judge can not intrude on the function of the jury as the trier of fact. The evidence need not be of such overwhelming magnitude that the jury must inevitably find guilt beyond a reasonable doubt; there need only be sufficient, legal evidence which when viewed in a light most favorable to the government, a jury can reasonably and in good faith make a finding of guilt beyond a reasonable doubt. 418 F. Supp. 557, 565 (W.D. Pa. 1976) (citations omitted). *See also United States v. Boatwright*, 425 F. Supp. 747, 749-50 (E.D. Pa. 1977); *United States v. Miah*, 433 F. Supp. 259, 264 (E.D. Pa. 1977), *aff'd*, 571 F.2d 573 (3d Cir. 1978).

In making its determination, the Court must consider the evidence in the light most favorable to the government; it is not for the trial judge to assess the credibility of witnesses, nor to weigh the evidence, nor to draw inferences of fact from the evidence. *United States v. Cohen*, 455 F. Supp. 843, 851-52 (E.D. Pa. 1997, *aff'd*, 594 F.2d 855 (3d Cir. 1979); *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983); *United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015) (explaining credibility determinations are for the factfinder); *Glasser v. United*

2

*States*, 315 U.S. 60, 80 (1942) (explaining that courts should not "weigh the evidence or determine the credibility of witnesses"). Rather, the Court is limited to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Shi*, 991 F.3d 198, 205 (D.C. Cir. 2021) (citations omitted). Stated otherwise, "a judgment of acquittal is warranted 'only when there is no evidence upon which a reasonable mind might find guilt beyond a reasonable doubt.'" *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) (quoting *United States v. Byfield*, 928 F.2d 1163, 1165 (D.C. Cir. 1991)). If, however, "the evidence reasonably permits a verdict of acquittal or a verdict of guilt, the decision is for the factfinder to make," and the motion must be denied. "Further, a court 'must presume that the [factfinder] properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *Id.* (quoting *United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983)).

### III. The Evidence Is Sufficient For A Guilty Verdict

The government has presented sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, that the defendant is guilty of all four misdemeanor counts. Because the defendant has not met Rule 29's "demanding standard," his motion should be denied in its entirety. *See United States v. Borda*, 768 F. Supp. 2d 289, 292 (D.D.C. 2011).

### A. Count One: Knowingly Entering or Remaining in any Restricted Building or Grounds

The jury found the defendant guilty beyond a reasonable doubt of Count One, which charges the defendant with knowingly entering or remaining in any restricted building or grounds. To find the defendant guilty of Count One, the jury was instructed that the government must prove beyond a reasonable doubt:

3

> First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.
>
> Second, the defendant did so knowingly, meaning that the defendant knew the building or grounds were restricted and he knew he lacked lawful authority to enter or remain there.

ECF No. 82 at 10.

The evidence at trial proved each of these elements beyond a reasonable doubt. The defense raises two arguments challenging the jury's verdict on this Count. The Court should reject both arguments.

### 1. The Evidence Shows That The Defendant Engaged In Disorderly Or Disruptive Conduct In, Or In Proximity To, Any Restricted Building Or Grounds

First, the defense argues that, under the first element of Count One, the evidence at trial did not "definitively establish[]" that the Capitol building and grounds constituted a "restricted building or grounds" within the meaning of 18 U.S.C. § 1752. Def. Mot. at 12-13. Specifically, the defense argues that although United States Capitol Police (USCP) Lieutenant George McCree testified that the Capitol grounds were closed for several reasons, "it was clear from his testimony that his agency did *not* close the Capitol building and its grounds" for the electoral college vote. Def. Mot. at 14. This argument is squarely inconsistent with the trial evidence.

The jury instructions defined "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting." ECF No. 82 at 11. The term "person protected by the Secret Service" includes the Vice President, and the immediate family of the Vice President.

The trial evidence was overwhelmingly sufficient on this element. First, the evidence introduced at trial through stipulation demonstrated that, "[o]n January 6th, 2021, the exterior of

4

the United States Capitol was closed to members of the public. Prior to January 6th, security barriers had been erected which included bike racks that were positioned" on the exterior of the Capitol grounds. Trial Tr. at 32 (8/14/2023). These barriers were positioned around the Capitol building on Capitol grounds in a manner similar to that reflected in Government Exhibit 208. Further, the uncontroverted trial testimony of USCP Lieutenant McCree demonstrated that many layers of signage, bike racks, snow fencing, and other barriers were erected to establish this restricted perimeter. *See, e.g.*, Trial Tr. at 53 (8/14/2023). Lieutenant McCree testified that the "area was restricted with a combination of bike racks and snow fencing that had signage that said that the area was closed," as well as police officer presence. *Id.*; *id.* at 63-64; *see also* Govt. Ex. 212, 207, 211 (photo of barriers from the morning of January 6, 2023, as attested to by Lt. McCree). Lieutenant McCree testified that he saw these barriers on the morning of January 6, 2021. Trial Tr. at 56-58, 63-64. These postings and signs were also introduced through the defendant's own video, Government Exhibit 505. In this video footage, it shows the defendant walk right over the barriers. Later in the day, when the defendant surged forward with the crowd on the West front, the defendant used one of the bike rack barriers as a ladder to gain access to the Northwest Staircase. Trial Tr. at 187 (8/14/2023). This is sufficient evidence from which a rational trier-of-fact, taking all inferences in favor of the government, could conclude that there was a posted, cordoned off, or otherwise restricted area of a building or grounds.

Next, the evidence at trial also established that the area "posted, cordoned off, or otherwise restricted" was the location where "the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). Here, the evidence demonstrated that former Vice President Pence, a secret service protectee, was temporarily visiting the Capitol on January 6, 2021. Lieutenant George McCree testified to that directly:

5

> Question: "And were there any restrictions also in place on January 6th due to the visitation of the vice president that would have been put in place in working with Secret Service?"
>
> Answer: the Capitol "building would have . . . had additional restrictions due to the fact that . . . we had a head of state, the vice president, in for a joint session on that day."

Trial Tr. at 46-47 (8/14/2023).

Lieutenant McCree testified that "[t]here was a scheduled joint meeting of Congress that day . . . [to] verify the congressional – Electoral College votes for the President of the United States." Trial Tr. at 46-47 (8/14/2023). This testimony was corroborated with the parties' stipulations that there was, in fact, a congressional proceeding on January 6, 2021. *See* Trial Tr. at 65 (8/14/2023). The testimony is further corroborated by Government Exhibit 103, a video recording of the Congressional Proceeding, which shows the former Vice President of the United States visiting the Capitol building as a protectee by the Secret Service. Trial Tr. at 70, 71 (8/14/2023). Also, Lieutenant McCree testified that he personally saw the vice president in the House Chamber. *Id.* at 73.

Accordingly, the Court should reject the defendant's argument that the restricted perimeter did not exist at the time of the defendant's entry.

### 2. The Evidence Shows That The Defendant Did So Knowingly

The defense also argues that, under the second element of Count One, there was insufficient evidence to demonstrate that the defendant "knew he lacked lawful authority" to enter and remain in the Capitol and its grounds. Def. Mot. at 15. In support, the defendant – incredibly – argues that, because Mr. Horn saw individuals engaging in journalistic activity inside and around the Capitol, he "naturally thought that there was no problem with doing the same thing." Def. Mot. at 15. The Court should reject this argument for several reasons.

First, the defendant admitted at trial that he knew the Capitol building was closed when he entered. Trial Tr. at 63 (8/15/2023). This testimony alone constitutes a sufficient basis for the jury to find this element is met, and overcomes the defense's argument that the defendant "knew he lacked lawful authority" to enter and remain in the Capitol and its grounds.

Second, this argument is not based on evidence presented at trial. In fact, the defendant admitted that he learned about many of the "journalists" inside the Capitol building only *after* January 6. Trial Tr. at 109 (8/15/2023).

And third, viewing the evidence in the light most favorable to the government, the evidence presented at trial established myriad reasons from which the jury could find that the defendant knew he lacked lawful authority to enter and remain in the Capitol and its grounds.

The defendant admitted that he visited the Capitol as a child and went through security, Trial Tr. at 64-65 (8/15/2023), but he did not go through security on January 6, 2021. The evidence showed that after the defendant bypassed security, he joined a mob reigning chaos on the Capitol building. On the grounds, after the defendant walked over – and looked directly at – "Area Closed" signs and down fencing, the defendant watched as rioters threw objects at police officers and eventually overran the police line. Trial Tr. at 33 (8/15/2023); Trial Tr. at 181 (9/14/2023); Govt. Ex. 505.3 at :51; Trial Tr. at 64 (8/15/2023). The defendant characterized this as an early "incident of violence" against officers.  Trial Tr. at 32 (8/15/2023). The defendant testified that he saw a guy being carried off Capitol grounds in a stretcher. Trial Tr. at 32 (8/15/2023). The defendant then sprinted towards the Northwest stairs and climbed a bike rack turned ladder to access the stairs and ascend to the Capitol building. Trial Tr. at 187 (9/14/2023). As he marched towards the building, the defendant saw rioters carrying bricks, wood, and other makeshift weapons towards the Capitol. Trial Tr. at 190 (9/14/2023).

The trial evidence also demonstrated that the defendant entered the Capitol building just minutes after the initial breach as alarms blared overhead, Trial Tr. at 64 (8/15/2023); broken glass scattered the floor, *id.*; and rioters in makeshift tactical gear climbed through windows, *id.*; Trial Tr. at 101-102, 195 (9/14/2023). Another rioter warned the defendant of the impending danger of entering the building. Trial Tr. at 33 (8/15/2023) (another rioter told the defendant, "if you enter this building, they're allowed to shoot you"). Even after he was inside the Capitol building, the defendant heard another rioter say "we should kill these people," and he saw a police officer that he believed might need to defend himself and "start shooting." Trial Tr. at 46-47 (8/15/2023). The defendant saw a rioter actively damage furniture in the Crypt. Trial Tr. at 52 (8/15/2023). He saw rioter banging on the House Chamber door, attempting to break it down. Trial Tr. at 120 (8/15/2023). The defendant watched as other rioters smoked marijuana inside the Capitol building, Trial Tr. at 219 (9/14/2023). Even after police officers corralled him and others out of the building, the defendant remained on the East front for another hour, as he watched rioters celebrate the mob's success in stopping the certification, and the defendant watched as a rioter deflated car tires. Trial Tr. at 223-227 (9/14/2023).

All of this evidence is sufficient from which the jury could find that the defendant knew he lacked lawful authority to enter and remain in the Capitol and its grounds.[1]

### B. Count Two: Disorderly Or Disruptive Conduct In Any Restricted Building Or Grounds

The jury found the defendant guilty beyond a reasonable doubt of Count Two, which charges the defendant with disorderly or disruptive conduct in any restricted building or grounds.

---

[1] Finally, the defense argues that the Court gave a legally infirm jury instruction. Def. Mot. at 10-11. The jury instructions were litigated during trial. The defense may file an appeal challenging the jury instructions, but the defense has not demonstrate why that argument would be proper here.

8

To find the defendant guilty of Count Two, the jury was instructed that the government must prove beyond a reasonable doubt:

> First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.
>
> Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of government business or official functions.
>
> Third, the defendant's conduct in fact impeded or disrupted the orderly conduct of government business or official functions

ECF No. 82 at 13-14.

The Court instructed the jury that:

> "Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.
>
> "Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.

The evidence at trial proved these elements beyond a reasonable doubt. And, taking into account the high burden of Rule 29, and viewing all of the evidence in the light most favorable to the government, the evidence is more than sufficient to overcome a Rule 29 motion.

First, the defense repeated the same arguments made under its Count One challenge – that the evidence at trial did not "definitively establish[]" that the Capitol building and grounds constituted a restricted building or grounds within the meaning of 18 U.S.C. § 1752. Def. Mot. at 17. The defendant ignores the standard under Rule 29, which requires only sufficient evidence to sustain a conviction. Even so, for the same reasons as described above, the evidence at trial was sufficient to support a conviction, and the Court should reject the defendant's argument.

Second, the defense argues that the defendant was not "disruptive," he did not "disturb[] the peace," and he did not "undermine public safety." Def. Mot. at 17. In support, the defense argues that the defendant is a "peaceful, soft-spoken young man who encouraged people to not be

9

violent and to not destroy property." Def. Mot. at 17. The defense again ignores the Rule 29 standard and takes liberties with the trial testimony. Taking the evidence in the light most favorable to the government, the following trial evidence was sufficient for a jury to conclude that the defendant's actions were disorderly or disruptive:

- The defendant approached the Capitol building and joined a mob of rioters who were climbing on statues and chanting things like, "stop the steal!" Trial Tr. at 179-180 (9/14/2023).

- The defendant entered the Capitol building – twice. Lieutenant McCree testified that Congress did not reconvene for the Joint Session until the USCP had time to clean up damage to the building and "assure there was no further threat to Congress," Trial Tr. at 77 (9/14/2023), which included removing every unauthorized person from the building, *id.* at 78.

- The defendant watched and stood close by as rioters threw objects, like a large orange traffic cone, at the police officers as the rioters yelled "hang traitors. Traitors will hang. Traitors will hang!" Trial Tr. at 186 (9/14/2023); Trial Tr. at 105 (9/14/2023).

- The defendant entered the Capitol building through a door that is not a typical entry. Trial Tr. at 45 (9/14/2023).

- The defendant destroyed property inside the Crypt. His destruction of another rioter's flagpole caused a verbal altercation and nearly caused a physical altercation. Trial Tr. at 201 (9/14/2023) (explaining that Horn said "this is wild" after "getting into some kind of altercation with another one of the rioters"); Trial Tr. at 38-39, 65-66 (8/15/2023).

- The defendant joined the mob and chanted "USA USA USA!" inside the building as the mob faced an outnumbered line of police officers. Trial Tr. at 200 (9/14/2023); Trial Tr. at 47 (8/15/2023).

- The defendant stormed up the stairs towards Speaker Pelosi's office as rioters changed, "stop the steal!"

- The defendant joined a group of rioters who outnumbered police officers and forced their way through the police line near the House Chamber. Trial Tr. at 208-209 (9/14/2023); Trial Tr. at 113 (8/15/2023) (Horn admitted that the rioters were trying to get into the Chamber and audibly banging on the door).

- The defendant climbed on an Abraham Lincoln statue in the Great Rotunda, where the statues are considered to be "of the highest honor." Trial Tr. at 118 (9/14/2023).

- The defendant joined a group of rioters in the Rotunda that outnumbered officers such that the officers could not control the rioters. This conduct "absolutely undermine[d] public safety in the building, and "disturb[ed] the peace in the building in this area. Trial Tr. at 156 (9/14/2023). The evidence revealed that the rioters gained a "tactical advantage" by taking the positioning that they did, and "present[ed] a huge danger for the [] lawmakers. ECF 80.

- The defendant joined groups of rioters in sensitive areas where the rioters outnumbered police officers. *See* Trial Tr. at 164 (9/14/2023).

The jury was entitled to reject the defense's non-sensical arguments and testimony at trial. For example, the defense argues that, although he did chant "USA USA USA!" in the Crypt, *his* personal chanting would not have been disruptive of the peace because other, more violent rioters around him were out of control. Def. Mot. at 17-18. Evidence demonstrated that, the fact that the defendant joined a mob with violent rioters and stormed the United States Capitol – in and of itself – constituted disorderly and disruptive conduct. *See* Trial Tr. at 147 (9/14/2023) (Lt. Patete: "The crowd outnumbered us exponentially, [which] made it impossible to address . . . very specific threats . . . ."); Trial Tr. at 151 (9/14/2023) (Lt. Patete: "everyone was a threat and they were working in concert"). As Lieutenant Patete testified, she "couldn't really address the person who [was] causing her the harm because there's another person in front of them who is not necessarily, like, swinging or kicking or, you know, punching." Trial Tr. at 151 (9/14/2023). Contrary to the defendant's argument the other rioters' more disruptive actions do not detract from the defendant's. If that argument were credited, only the few "most serious" or "most violent" rioters' actions would be " disorderly or disruptive." But we know that not to be true. The mob, as a whole, was disorderly and disruptive, as were the defendant's individual actions, listed above.

Third, the defense argues that "*no evidence* was presented" that the defendant "had the intent to impede or disrupt the orderly conduct of government business or official functions." Def. Mot. at 18. The defendant contends that no trial evidence demonstrates that he formed intent prior

11

to January 6. Def. Mot. at 18. But premeditated intent is not an element of the jury instructions, and this argument is irrelevant. Given that factfinders are rarely given the opportunity to truly occupy a defendant's mindset at the time, it is black letter law that intent or *mens rea* can be inferred from a defendant's conduct. *See, e.g.*, *United States v. Hite*, 896 F. Supp. 2d 17, 24 (D.D.C. 2012) ("[C]ourts and juries every day pass upon knowledge, belief and intent—the state of men's minds—having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.") (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008))).

The defendant's conduct as presented during trial amounts to more than sufficient evidence for the factfinder to find the defendant guilty beyond a reasonable double. For example, the defendant's deliberate approach throughout the building, during which he joined several crowds that overwhelmed and overran police lines – in the Crypt, near the House Chamber, and the Rotunda; or the defendant's lengthy presence at the House Chambers doors – where he acknowledged that he watched as the crowd was full of "people trying to break down the doors of Congress,"–Trial Tr. at 115 (8/15/2023), in attempt to "cause harm to Congress." Trial Tr. at 82, 91, 95 (explaining that rioters were banging on the doors of the House Chamber) (8/14/2023); Trial Tr. at 120 (8/15/2023).

Next, the defense argues that his *individual* conduct did not impede or disrupt the orderly conduct of business. Def. Mot. at 18. This argument is dispelled by uncontroverted trial testimony. Lieutenant McCree testified that Congress could not resume the joint session until *every* rioter was cleared from the building. Thus, while the defendant was in the building, he in fact impeded and disrupted the orderly conduct of business. This argument is wrong from a legal perspective as well. As several members of this court have acknowledged, a riot is not a riot with participants. The

defendant joined the mob, he stormed the Capitol, and he joined several groups of rioters that faced and overwhelmed police officers by sheer numbers. The defendant's actions cannot be view devoid of context.

As explained above, there was sufficient evidence introduced at trial to support a conviction on Count Two.

### C. Count Three: Disorderly Conduct In A Capitol Building

The jury found the defendant guilty beyond a reasonable doubt of Count Three, which charges the defendant with disorderly conduct in a Capitol building. The defense incorporates his prior arguments to contend that he did not engage in disorderly or disruptive conduct for purposes of Count Three. Def. Mot. at 19. We also incorporate our response above.

### D. Count Four: Parading, Demonstrating, Or Picketing In A Capitol Building

The jury found the defendant guilty beyond a reasonable doubt of Count Four, which charges the defendant with parading, demonstrating, or picketing in a Capitol building. To find the defendant guilty of Count Four, the jury was instructed that the government must prove beyond a reasonable doubt:

> First, the defendant paraded, demonstrated, or picketed in any of the United States Capitol Buildings.
>
> Second, the defendant acted willfully and knowingly.
>
> The terms "knowingly" and "willfully" have the same meanings described in the instructions for Counts One and Three.

The Court instructed the jury that the term "'demonstrate' refers to conduct that would disrupt the orderly business of Congress by, for example, impeding or obstructing passageways, hearings, or meetings, but does not include activities such as quiet praying." ECF No. 82 at 19.

The words "parade" and "picket" have their ordinary meanings. The defense defines "picket" as, among other things, "to walk or stand in front of as a picket." Def. Mot. at 20.

The evidence at trial was sufficient to support a conviction as to this Count.

The defense argues that the Court should "take Count Four away from the jury" and enter a judgment of acquittal because "the government did not introduce any evidence" that the defendant paraded, demonstrated, or picketed "at any point on January 6, 2021." Def. Mot. at 20. The defendant simply ignores the evidence adduced at trial and attempts to compel this Court to improperly weigh the evidence.

The evidence at trial showed that the defendant joined a mob outside the House Chamber, where Congress had recently evacuated, and where other members of the media and Capitol Police were in hiding, as Lieutenant McCree testified. The defendant similarly joined a mob in the Crypt that overrun the police line and allowed the rioters – for the first time – to flood deeper into the building. Trial Tr. at 112-113 (9/14/2023). And the defendant joined another mob that overwhelmed police officers in the Rotunda. The defendant climbed on a statue to revel in the chaos. The evidence at trial also shows that the defendant entered into Speaker of the House Nancy Pelosi's office. Each of these actions – which is merely a small sample of the trial evidence outlining the defendant's behavior – is sufficient for a reasonable jury to sustain a conviction under this count. *See also supra* at pgs 10-11.

The defense's characterization that the defendant "merely walked around" is a far from cry reality. The defendant ran to the Northwest stairs to access the building when the final line was breached on the West front; the defendant ran through Speaker Pelosi's office, Trial Tr. at 116 (9/14/2023); he darted out of the Capitol building (before re-entering); and he climbed on an

Abraham Lincoln statue Trial Tr. at 116, 167 (9/14/2023) – all of these actions are sufficient for the jury to find the defendant guilty on Count Four.

Finally, throughout its motion, the defendant relies on numerous statements that are without factual support and without citation to the case record. The defense should know that, under Rule 29(b), the Court "must decide the motion on the basis of the evidence at the time the ruling was reserved." The defense cannot rely on unsupported *argument* to persuade the Court to overturn a jury verdict under Rule 29. Similarly, the defense cannot cite evidence that was excluded at trial, as the defense did here. *See* Def. Mot. at 7. The Court should disregard the defense's unsupported, conclusory statements, as well as citation to evidence not in the record.

Additionally, the defense suggests that the length of time the jury deliberated is indicative that the jury "did not properly evaluate the evidence that was introduced at trial." Def. Mot. at 9. This argument is legally infirm. Courts have repeatedly held to the contrary. In fact, the defense admits that a jury's "brief deliberation" is not a basis for acquittal. *Id.* at 9-10 (citing *United States v. Cunningham*, 108 F.3d 120, 124 (7th Cir. 1997)).

### IV.   Conclusion

The evidence, when view in the light most favorable to the government, is sufficient for a jury to find beyond a reasonable doubt that the defendant committed the conduct charged in the Four Counts. Although the defense argues that the jury "appears to have misunderstood that the government was required to prove far more than his mere presence at the Capitol," the defendant falls far short of meeting the standard under Rule 29.  The defense ignores critical evidence, relies on argument unsupported by the record, and misapplies the Rule 29 standard. Consequently, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

/s/ Ashley Akers
Ashley Akers
Trial Attorney
MO Bar No. 69601
Detailed to the U.S. Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 353-0521
Ashley.Akers@usdoj.gov