UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NO. 1:21-CR-00301-TJK-1

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEPHEN ETHAN HORN,<br><br>*Defendant.* | DEFENDANT'S<br>SENTENCING MEMORANDUM |

The Defendant, Stephen Ethan Horn ("Mr. Horn" or "Stephen"), by and through undersigned counsel, submits this memorandum in support of his request for a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). Mr. Horn's history and characteristics and the nature of *his* conduct on January 6, 2021, unequivocally suggest that a probationary sentence is more than sufficient to serve the goals of sentencing, to wit: "retribution, deterrence, incapacitation, and rehabilitation." *See Tapia v. United States*, 564 U.S. 319, 325 (2011).

## FACTUAL BACKGROUND[1]

As he said the very night he returned to North Carolina after being in Washington, DC on January 6, 2021, Stephen Horn went into the United States Capitol that day not "as part of the protest, or for cheap thrills, but to accurately document and record a significant event which was taking place." *See* Defendant's Trial Exhibit Five, "Horn's Facebook Post that accompanied his

---

[1] Having heard a number of motions and presided over a three-and-a-half day jury trial of this matter, the Court is no doubt familiar with the facts of Mr. Horn's case. For the sake of brevity, Mr. Horn summarizes the facts relevant to sentencing herein and relies upon the numerous character letters submitted by family, friends, and followers on his behalf, as well as the biographical information contained in Part C of the Final Presentence Investigation Report (PSR), ECF No. 96.

1

J6 video." In the other statements Mr. Horn has since given, including his voluntary interview with the Federal Bureau of Investigation (FBI) and his testimony at the trial of this matter, Mr. Horn has remained consistent with his message that he went into the Capitol on January 6, 2021, for purely journalistic purposes.

"Stephen cares about the TRUTH." *See* Sentencing Exhibit One, Character Letters, at 2 (Letter from Mother). His dedication to the truth initially sparked his interest in journalism and ultimately took him into the Capitol on January 6, 2021. *See id.* Wanting to help law enforcement determine what really happened on January 6, 2021, and who was responsible for the events of that day, Stephen contacted both the FBI and the North Carolina Department of Justice (NCDOJ) in the days following January 6, offering to provide the video footage he had recorded. *See* Sentencing Exhibit Two, Horn's FBI Tip[2]; *see also* ECF No. 58-3 (email documenting tips to FBI and NCDOJ).

Little did he know or expect that, despite being completely forthcoming about what he did and witnessed on January 6, 2021, and why he went into the Capitol, the government would later charge him with four misdemeanors for engaging in journalism at the Capitol. When the government offered Stephen a chance to plead guilty to a Class B misdemeanor in exchange for its promise to ask the Court to dismiss the remaining charges, which included two Class A misdemeanors, Stephen could not accept the offer. Doing so would have required him to lie by admitting his guilt for a crime he did *not* commit.

The case proceeded to trial, at which Stephen did *not* contest most of the evidence offered by the government with respect to the January 6, 2021, events at the Capitol. Even during his own testimony, Stephen admitted that he was at the Capitol on January 6, 2021, and he told the

---

[2] The government did not disclose this documentation of Mr. Horn's FBI Tip until Sunday, September 10, 2023, merely *three days* before his trial commenced on Wednesday, September 13, 2023.

jury why he went to DC that day and ultimately why he decided to go into the building. Stephen had—and continues to have—nothing to hide with respect to his conduct on January 6, 2021, and he has never attempted or wanted to change his narrative of it.

Meanwhile, other non-credentialed journalists, both independent and otherwise, have *not* been charged with any crimes for doing exactly what Stephen Horn did on January 6. *See* D.E. 58, 71. Stephen continues to believe he did nothing wrong that day and should not have been prosecuted for his journalism, and he is not alone in holding that opinion. *See* Steve Baker, *Analysis: Where independent journalism will land you in prison*, BLAZE MEDIA (Sept. 19, 2023), https://www.theblaze.com/column/opinion/analysis-where-independent-journalism-will-land-you-in-prison; *see also* Sentencing Exhibit One at 22–39 (letters from supporters criticizing the government's treatment of Mr. Horn).

Even so and while he maintains his innocence of the charges, Mr. Horn submits this memorandum in support of his request for the Court to impose a probationary sentence at his January 10, 2023, sentencing hearing. As explained below, each of the § 3553(a) factors warrant such a sentence.

### THE § 3553(A) FACTORS

As the Court is aware, the calculation of the advisory guideline range applicable to any given case is the first step in the sentencing process. *Gall v. United States*, 552 U.S. 38, 49–50 (2007) (stating that "the Guidelines should be the starting point and the initial benchmark"). Here, Mr. Horn agrees with the Probation Office that the advisory guideline range of imprisonment is 0–6 months. *See* ECF No. 96, ¶ 94. Once this Court establishes the guideline range, it must then consider the factors set forth in 18 U.S.C. § 3553(a) regarding what sentence is ultimately "sufficient, but not greater than necessary," to serve the goals of sentencing. *See id.*

These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court must also consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,]" as well as its need to deter criminal conduct, "protect the public from further crimes of the defendant[,] and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." *Id.* § 3553(a)(2). Finally, the Court must consider the kinds of sentences available, the advice of the guidelines, the need to provide restitution to any victims, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* § 3553(a)(3)–(7).

The Court "must make an individualized assessment [of these factors] based on the facts presented." *Gall*, 552 U.S. at 50. Here, an application of those factors reveals that a probationary sentence is sufficient to serve the goals of sentencing.

### (I) Stephen's "Criminal" Conduct

On January 6, 2021, Stephen Horn went into the United States Capitol and walked around, all the while recording everything he witnessed with a cell phone and a video camera embedded into a helmet he wore. That is the extent of his "criminal" conduct that day. *He* did not engage in violence, and he did not damage, or cause to be damaged, any property of the United States.

Ignoring the evidence, the government continues to assert otherwise. *See* ECF No. 90 at 10 (claiming Mr. Horn "destroyed property inside the Crypt"); ECF No. 94 at 1–2 (suggesting Mr. Horn engaged in violence on January 6, thereby rendering him ineligible for USSG §4C1.1's zero-point offender reduction). Mr. Horn asks the Court to squarely reject the government's

4

unsupported claims, and should it have any questions regarding what Mr. Horn did or did not do that day, he urges the Court, just as he did the jury, to watch the video of his footage from inside the Capitol. *See* Government's Trial Exhibit No. 505. As his friend Charles Churchill wisely observes concerning the events of January 6, there is a fundamental "difference between a rioter who [went] there to rage and cause violence and a man who believed that a journalist should go where the story is." *See* Sentencing Exhibit One at 9.

### (II) Stephen's History and Characteristics

Stephen Horn's history and characteristics likewise suggest that a probationary sentence is sufficient to serve the goals of sentencing here. As demonstrated by the letters submitted by his family and friends and the information contained in Part C of the PSR, Stephen is a good, law-abiding citizen. *See* Sentencing Exhibit One at 2–18; ECF No. 96 at 11–16.

Stephen is a college graduate who has no criminal record outside of this case—not even, as this Court previously remarked, "a single arrest." *See* March 1, 2022, Minute Order granting Defendant's Motion to Amend Conditions of Release. Stephen started working for his father's IT company, "Datatek," in 2009 when he was 10, and in 2020, he began his career as an independent journalist. Stephen has *no* substance abuse or mental health issues.

For these reasons, Stephen's case is unique in that the fact of conviction *alone*—along with the collateral consequences associated with being convicted of a crime—serves two of the four purposes of sentencing: retribution and deterrence. *See Tapia*, 564 U.S. at 325. Unlike many states, federal law generally provides no means for criminal charges or convictions to be expunged from one's criminal record, meaning Stephen will have to live with these conviction(s) for the rest of his life. To someone who has successfully strived to live nothing but a law-abiding life and has never previously been arrested, that is a *big* deal. Future employers could conduct

background checks and discover these charges, thereby potentially causing Stephen to miss out on new career opportunities, should he ever desire to pursue them.

### (III) The Remaining § 3553(a) Factors

In addition to the nature and circumstances of Stephen's conduct and his history and characteristics, the Court must also consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[,]" as well as its need to deter criminal conduct, "protect the public from further crimes of the defendant[,] and . . . provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2).

Unlike the vast majority of criminal defendants that appear in federal court, Stephen Horn is clearly *not* a danger to any other person or the community. *See* United States Sentencing Commission, *The Criminal History of Federal Offenders 2* (May 2018), available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180517_criminal-history.pdf (providing that, for fiscal year 2016, 72.8% of federal offenders "had been convicted of a prior offense"). Similarly, he is not in need of correctional treatment or any further educational or vocational training. As such, the remaining factors can be narrowed to the goals of retribution and deterrence. For the reasons discussed above, those offered in the letters submitted by his family, friends, and followers, and other arguments that will be expounded upon at the sentencing hearing, a probationary sentence serves the purposes of both retribution and deterrence in this case.

The Court must also consider the kinds of sentences available, the need to provide restitution to any victims, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(3),

(6)–(7). With respect to the kinds of sentences available and while maintaining that a sentence of anything but straight probation would be greater than necessary to serve the goals of sentencing, Mr. Horn is open to any type of sentencing arrangement that would allow him to maintain his employment and avoid serving a term of imprisonment, e.g., a probationary sentence with "a condition requiring a period of community confinement, home detention, or intermittent confinement." *See* USSG §5B1.1, comment. n.1 (discussing sentencing options when "the applicable guideline range is in Zone A of the Sentencing Table"); *see also* 18 U.S.C. § 3563(b) (listing possible discretionary conditions of probation).

A probationary sentence in Mr. Horn's case would *not* cause an unwarranted sentencing disparity. Upon information and belief, this Court has sentenced defendants facing the same four January 6 charges as Mr. Horn to probation. *See, e.g.*, *United States v. Robert Thomas Snow*, No. 1:22-cr-00030-TJK-1 (12 months' probation); *United States v. Brian Raymond Jones*, 1:22-cr-00205-TJK-1 (24 months' probation).

Finally, Mr. Horn objects to restitution being ordered in his case because, as acknowledged by the Probation Office, there "was no evidence submitted at trial indicating that the defendant destroyed or stole Capitol property or assaulted any law enforcement officers." *See* US Probation Office's Sentencing Recommendation. "It is axiomatic that 'the defendant should not be required to pay restitution for harm he did not cause.'" *United States v. McCormick*, No. CR 18-359-4 (JDB), 2023 WL 8697851, at *4 (D.D.C. Dec. 15, 2023) (quoting *In re Sealed Case*, 702 F.3d 59, 66 (D.C. Cir. 2012)).

## THE GOVERNMENT'S GUIDELINE OBJECTION

Mr. Horn writes briefly to address the government's position that he should not receive the Zero-Point Offender reduction under USSG §4C1.1. *See* ECF No. 96 at 23. In short, the

7

Probation Office has correctly applied the reduction because Mr. Horn satisfies *all* ten of §4C1.1(a)'s criteria.

§4C1.1 directs the Court to "decrease the offense level determined under Chapters Two and Three by 2 levels" where "the defendant meets all of the following criteria:"

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism);
> *(3) the defendant did not use violence or credible threats of violence in connection with the offense*;
> (4) the offense did not result in death or serious bodily injury;
> (5) the instant offense of conviction is not a sex offense;
> (6) the defendant did not personally cause substantial financial hardship;
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
> (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
> (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848;

USSG §4C1.1(a) (emphasis added).

The government appears to agree that Mr. Horn satisfies all criteria except the third, which requires that *the defendant* not have used violence or credible threats of violence in connection with the offense. But, as the Probation Office correctly observes, there is simply "no evidence indicating [Mr. Horn,] *the defendant*[,] used violence or credible threats of violence in connection[] with the offense." ECF No. 96 at 23 (emphasis added). That other individuals at the Capitol on January 6, 2021, may have done so is of no import, as the guideline is unambiguously directed at the conduct and criminal history of the defendant alone.

8

For this reason, Mr. Horn asks the Court to overrule the government's objection to the application of §4C1.1's reduction and calculate the advisory guideline range of imprisonment at 0–6 months.

## CONCLUSION

January 6, 2021, was not a good day for the United States of America or its capital city. Mr. Horn held that opinion upon his return to North Carolina from documenting those events, and he continues to believe that today. But, as he told the jury, this case is not so much about January 6 as it is about Stephen Horn, what he did, and why he did it. Regardless of whether one agrees Stephen made good decisions on January 6, this young man with a spotless criminal record should not have his life disrupted with a prison sentence for what he did that day. He respectfully asks the Court, should it not grant his Rule 29 motion to set aside the jury's verdict, to impose a straight probationary sentence.

Respectfully submitted this 3rd day of January, 2024.

/s/ *Marshall H. Ellis*
MARSHALL H. ELLIS
Hornthal, Riley, Ellis & Maland, LLP
301 East Main Street
Elizabeth City, NC 27909
Telephone: 252-335-0871
Fax: 252-335-4223
Email: mellis@hrem.com
N.C. State Bar No. 47720
Retained Counsel for the Defendant

/s/ *Charles R. Haskell*
Charles R. Haskell
LAW OFFICES OF CHARLES R. HASKELL, P.A.
641 Indiana Ave. NW
Washington, DC 20004
(202) 888-2728
Email: charles@charleshaskell.com
DC Bar No. 888304007
Retained Counsel for the Defendant

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served upon:

Ashley Akers
DOJ-CIV
Commercial Litigation Branch
1100 L Street Northwest
Washington, DC 20530
(202) 353-0521
Email: ashley.akers@usdoj.gov

Sonia Williams Murphy
DOJ-CIV
Civil Division - Commercial Litigation Branch
1100 L Street NW
Washington, DC 20530
202-305-3067
Email: sonia.murphy@usdoj.gov

by electronically filing the foregoing with the Clerk of Court on January 3, 2024, using the CM/ECF system which will send notification of such filing to the above.

    This the 3rd day of January, 2024.

        ***/s/ Marshall H. Ellis***
        MARSHALL H. ELLIS
        Hornthal, Riley, Ellis & Maland, LLP
        301 East Main Street
        Elizabeth City, NC 27909
        Telephone: 252-335-0871
        Fax: 252-335-4223
        Email: mellis@hrem.com
        N.C. State Bar No. 47720
        Retained Counsel for the Defendant


        ***/s/ Charles R. Haskell***
        CHARLES R. HASKELL
        LAW OFFICES OF CHARLES R. HASKELL, P.A.
        641 Indiana Ave. NW
        Washington, DC 20004
        (202) 888-2728
        Email: charles@charleshaskell.com
        DC Bar No. 888304007
        Retained Counsel for the Defendant